Argued and submitted October 21, at South Medford High School, Medford, reversed; DMV order suspending driving privileges reinstated November 26, 2003

In the Matter of the Suspension of
the Driving Privileges of
Michelle Frances ROBINSON,
*Respondent,*

*v.*

DRIVER AND MOTOR VEHICLE
SERVICES DIVISION (DMV),
acting by and through the
Department of Transportation,
*Appellant.*

02CV1161CC; A119760

80 P3d 536

David F. Coursen, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Charles F. Lee argued the cause for respondent. With him on the brief was Lee & Kaser, P.C.

Before Schuman, Presiding Judge, and Ortega, Judge, and Schiveley, Judge pro tempore.

SCHIVELEY, J. pro tempore.

## SCHIVELEY, J. pro tempore

The state appeals a judgment of the circuit court setting aside a final order of the Driver and Motor Vehicle Services Division of the Department of Transportation (DMV) that suspended petitioner's driving privileges for refusing to submit a urine sample. The state argues that the trial court erred in ruling that petitioner did not refuse the officer's request for a urine sample. We agree and reverse.

We take the following facts from the record. Petitioner was stopped by Officer Plummer for a traffic infraction. Based on petitioner's talkative, animated demeanor, and exaggerated movements, Plummer, who has been certified as a drug recognition expert (DRE), formed a belief that petitioner might be driving under the influence of a controlled substance. After conducting field sobriety tests, the officer arrested petitioner for driving under the influence. Petitioner subsequently submitted to a chemical test of her breath, which disclosed a blood alcohol content of less than .08 percent. Petitioner then consented to a DRE evaluation. Plummer requested that petitioner provide a urine sample at the beginning of that evaluation. She stated that she would but was presently unable to do so. Plummer again requested that petitioner provide a urine sample at the completion of the evaluation. She replied that "she couldn't provide a sample and would not even try." Plummer took that statement as a refusal and made no further requests of petitioner.

DMV issued a final order suspending petitioner's license for refusing to take the urine test. Petitioner sought judicial review, and the circuit court reversed, ruling that petitioner did not refuse the test. The state then appealed that ruling. Although the appeal is from the circuit court, we review DMV's order directly for substantial evidence and errors of law. ORS 813.450(4), (5); *Basile v. DMV*, 167 Or App 335, 337, 1 P3d 481 (2000).

All persons operating motor vehicles in this state consent to a chemical test of that person's breath upon the request of a police officer having reasonable grounds to believe that the person has been driving under the influence of intoxicants. ORS 813.100. When that person takes such a

test and the test discloses a blood alcohol content of less that .08 percent, a properly trained police officer who has reasonable suspicion that the person arrested has been driving while under the influence of a controlled substance or inhalant, or a combination thereof, may then request the person to provide a urine sample for chemical testing. ORS 813.131. All motor vehicle operators in this state are deemed to have given consent to such a test under these circumstances. ORS 813.131(1). A refusal to take a urine test is treated the same as a refusal to take a breath test and, thus, will result in a suspension of the person's driving privileges. ORS 813.132.

Petitioner argues that there is a necessary physical distinction between a person's ability to provide a breath sample and the person's ability to provide a urine sample. She points out that she was cooperative with the officer throughout their contact and went so far as to drink a considerable amount of water after their arrival at the jail. While her initial reason in doing so was merely because, as she stated, she was thirsty, her consumption of approximately 72 ounces of water could also be viewed as continued cooperation in an effort to provide a urine sample. The officer testified that petitioner first began drinking water at 1:34 a.m. and was last asked for a urine sample at 3:50 a.m. Despite the lapse of approximately two and one-fourth hours from the time she began consuming water until the "refusal" (and approximately three and three-fourths hours from the time of the arrest), petitioner stated that she still could not provide a urine sample and that she "would not even try."

■ ■ "[A]nything substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so." *Moore v. Motor Vehicles Division*, 293 Or 715, 722, 652 P2d 794 (1982) (citations and quotation marks omitted). Petitioner claims that given more time she would have inevitably been able to produce the sample requested. Our ruling does not deal with the issue of what might constitute a reasonable amount of time for an officer to wait for a urine sample. In the breath test context, we have ruled that the officer can insist that the test be conducted promptly. *See Caldeira v. DMV*, 181 Or App 168, 171, 45 P3d 489, *rev den*, 334 Or 631 (2002) (quoting *Moore*, 293 Or at 722). In the urine test context, it is obvious

that a more flexible standard must be applied. Despite petitioner's argument on the point, the record here does not provide any evidence that the controlled substances, if any, that would have been present in petitioner's urine at the time the police officer requested the sample would still have been present sometime later, when the petitioner felt "ready" to produce the sample. Our ruling deals solely with the refusal of petitioner to provide the sample. We hold that, when petitioner responded to the officer's final request by stating that she could not produce a sample *and would not even try*, that constituted a refusal to take the urine test.

Reversed; DMV order suspending driving privileges reinstated.