Argued and submitted October 5, reversed December 8, 2004

In the Matter of the Suspension of
the Driving Privileges of

Anthony Michael WAHLGREN,
*Respondent,*

*ı v.*

DEPARTMENT OF TRANSPORTATION,
Driver & Motor Vehicles Services Branch (DMV),
*Appellant.*

0305-05064; A123014

102 P3d 761

Richard Wasserman, Assistant Attorney General, argued the cause for appellant. On the briefs were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Jill Smith, Assistant Attorney General.

John W. Neidig argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Haselton, Judge.

LANDAU, P. J.

## LANDAU, P. J.

In this implied consent case, the state appeals a judgment that set aside an order of the Department of Transportation, Driver and Motor Vehicle Services Branch (DMV) affirming the suspension of petitioner's driving privileges for refusing a blood test. The state argues that the trial court erred in setting aside DMV's order on a ground that was not preserved. We agree and reverse.

Although the state appeals a judgment of the circuit court, we review the DMV order directly for substantial evidence and errors of law. ORS 813.450(4); *Robinson v. DMV*, 191 Or App 122, 124, 80 P3d 536 (2003).

The DMV order includes the following findings of fact: Police responded to a report of a motor vehicle accident. Officer Beniga contacted petitioner, the driver of one of two vehicles involved in the accident. Beniga smelled the odor of alcohol on petitioner's breath and noted that petitioner had bloodshot and watery eyes, a flushed complexion, and slurred speech. Beniga called for a traffic officer to evaluate petitioner for possible driving under the influence of intoxicants (DUII).

Officers Ladd and Dobbs responded. Both officers noticed the odor of alcohol on petitioner's breath and his slurred speech. They also noted that petitioner was swaying and unsteady on his feet. Petitioner was angry and agitated about the accident. Ladd asked petitioner if he would be willing to complete some field sobriety tests. Petitioner agreed, but he had difficulty standing upright and keeping his eyes open. When he began to complain about neck and back pain, Ladd asked petitioner if he wanted medical attention. Petitioner declined and yelled that he would "take the stupid tests." Ladd elected not to conduct the tests and called for an ambulance.

When the ambulance arrived, petitioner became more agitated and violent, even taking a swing at one of the emergency medical technicians as they strapped him onto a stretcher. Petitioner was then transported to the hospital.

At the hospital, Ladd and Dobbs met with petitioner, who again became angry, agitated, and uncooperative. Dobbs told petitioner that he was under arrest for DUII and advised him of his *Miranda* rights. Dobbs then requested that petitioner submit to a blood test. Dobbs read to petitioner the "rights and consequences" portion of an implied consent form. In response, petitioner told the officers, "I'm not giving you shit." Ladd and Dobbs understood that to be a refusal. DMV later issued a notice of suspension based on petitioner's refusal.

Petitioner asked for a hearing on the suspension, and he received a hearing before an administrative law judge (ALJ) from the Office of Administrative Hearings. Appearing without counsel, petitioner challenged the suspension on the ground that he was "not of sound mind or body" when he was asked to submit to the blood draw. He also said that he did not understand the rights and consequences information that Dobbs read to him. The state offered the testimony of Dobbs. During Dobb's testimony, the ALJ noticed a comment in a written report that Ladd had prepared concerning the arrest. The comment stated that, as the officers attempted to give petitioner *Miranda* warnings, he "began to shout about wanting his lawyer." The ALJ took a brief recess and asked petitioner to review the report.

When the hearing recommenced, the ALJ asked petitioner, "Did you want to use the phone or did you want to contact an attorney?" Petitioner answered, "No." The ALJ also questioned Dobbs about the incident, specifically whether Dobbs heard petitioner ask for a lawyer. Dobbs answered, "No." The ALJ repeated, "Did [petitioner] indicate that he wanted to consult with an attorney or did you hear anything in that regard?" Dobbs answered, "I don't recall him telling me that he wanted an attorney and if he did, I would've written [it] in my report."

At the close of testimony, the ALJ asked petitioner if there was "anything else before we close the record?" Petitioner demurred. The ALJ then restated that the issue before her was whether petitioner was "of a state of mind to refuse the test." A few days later, she issued an order concluding

that petitioner's driving privileges were subject to suspension.

Petitioner then sought circuit court review. Before the circuit court, he advanced a new contention, namely, that the DMV order should be vacated because "petitioner was denied a reasonable opportunity to consult with counsel." The state objected that petitioner had failed to advance that contention before the ALJ. Petitioner acknowledged that much, but insisted that the ALJ had an independent obligation to address the matter. The circuit court agreed with petitioner. In a letter opinion, the court concluded:

> "As a fundamental constitutional right was violated, the Court finds that the hearing officer abused her discretion. The Court further notes that the Defendant was not required to have objected [due] to his lack of an attorney at the prior hearing.
>
> "* * * The hearings officer properly raised the issue by handing the defendant a copy of the police report that memorializes the failure to respond to the plaintiff's statement that he wanted to talk to a lawyer, instructing him to review it and calling a break to give him an opportunity to do so. Those actions were laudatory. Her failure to find plaintiff's constitutional rights had been violated was reversible error."[1]

On appeal, the state argues that the trial court erred in setting aside the DMV suspension order on a ground that was not preserved. In response, petitioner advances a number of arguments in support of the trial court's decision: (1) ordinary rules of preservation do not apply in cases involving decisions of administrative agencies; (2) even if ordinary rules of preservation otherwise apply, they do not in this case, because petitioner appeared at the implied consent hearing *pro se*; (3) even if ordinary rules of preservation otherwise apply, they "should be excused when a fundamental constitutional right [is] involved"; and (4) even if ordinary

---

[1] Thus, the circuit court appears to be making its own findings of fact, rather than limiting its review to whether the ALJ's findings were supported by substantial evidence. Because of our disposition of the appeal on other grounds, we need not address whether the circuit court erred in doing so. *But see* ORS 813.450(4) (circuit court reviews implied consent order for errors of law, abuse of discretion, and substantial evidence).

rules of preservation apply, the ALJ had an independent obligation to pursue the issue.

■ We begin with the question whether the rules of preservation apply on judicial review of decisions of administrative agencies. The answer is yes. In *Thomas Creek Lumber v. Board of Forestry*, 188 Or App 10, 30, 69 P3d 1238 (2003), we explained:

> "ORAP 5.45(1) provides that '[n]o matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court.' Moreover, ORAP 5.45(4)(c) provides that '[t]he court may decline to consider any assignment of error that requires the court to search the record to find the error or to determine if the error properly was raised and preserved.' *Those preservation requirements apply not only to appeals of trial court judgments but also to petitions for judicial review of agency action.*"

(Emphasis added.) *See also Kniss v. PERB*, 184 Or App 47, 51, 55 P3d 526 (2002); *Veselik v. SAIF*, 177 Or App 280, 288, 33 P3d 1007 (2001), *rev den*, 334 Or 121 (2002).

■ There is no exception for implied consent hearings. In *Warner v. MVD*, 126 Or App 164, 168, 868 P2d 6 (1994), for example, the petitioner argued that he was entitled to raise an issue concerning the validity of his arrest for the first time in the circuit court. We disagreed, holding that the scope of the circuit court's review is limited to the record of the implied consent hearing and to issues raised at that hearing. *Id.* at 168-69; *see also Crawford v. MVD*, 98 Or App 354, 355, 779 P2d 196, *rev den*, 308 Or 608 (1989) ("[R]espondent must raise the issue of the propriety of his arrest during the evidentiary part of the hearing for it to be considered."); *Bish v. MVD*, 97 Or App 648, 651-52, 776 P2d 1320 (1989) ("[T]he hearings officer must consider the propriety of an arrest only if the driver raises the issue during the evidentiary part of the hearing.").

■■ Nor is there an exception—as petitioner suggests in this case—for parties appearing *pro se*. As this court explained in *State v. Palmer*, 35 Or App 125, 128, 580 P2d 592 (1978), "[a] defendant appearing *pro se* must inform himself of and comply with court rules as any other litigant." That is not to say that an agency may not choose to afford

*pro se* litigants some latitude as to procedural requirements, but, when the agency has not chosen to do so, it may not be compelled to do so. *Bennett v. Board of Optometry*, 125 Or App 66, 71, 865 P2d 362, *rev den*, 318 Or 582 (1994) ("[A]n agency is not compelled to excuse a *pro se* litigant from procedural requirements.").

■ There is likewise no exception from ordinary preservation requirements in cases involving "fundamental constitutional rights." *See, e.g.*, *State v. Terry*, 333 Or 163, 180-81, 37 P3d 157 (2001), *cert den*, 536 US 910 (2002) (declining to address unpreserved *ex post facto* argument); *Bryant v. Walker*, 190 Or App 253, 257-59, 78 P3d 148 (2003), *rev allowed*, 337 Or 34 (2004) (declining to address unpreserved due process argument).

■ We turn to petitioner's contention that, even if ordinary preservation rules otherwise apply, the ALJ in this case had an independent obligation to raise the issue that petitioner now seeks to assert. Citing *Berwick v. AFSD*, 74 Or App 460, 703 P2d 994, *rev den*, 300 Or 332 (1985), he argues that the ALJ was obligated to preserve meritorious issues for him.

In *Berwick*, the petitioner argued that the Adult and Family Services Division (AFSD) should not have terminated her general assistance benefits because she was not employable. She argued that the hearings officer's findings to the contrary were not supported by substantial evidence and that, in any event, the hearings officer should have assisted her in presenting favorable evidence on that issue. This court agreed with petitioner's latter point and reversed and remanded for a new hearing. *Id.* at 42.

This court explained that, because of the "non-adversarial nature of AFSD hearings," the hearings officer has a role that is different from the "disinterested adjudicator" that may preside over other types of hearings. *Id.* at 465-66. The court noted that "[t]he hearings officer is an AFSD employee, not an independent adjudicator, because the hearing is part of the agency decision making process" that is informal and not final. *Id.* at 465. Under those circumstances, we held, a hearings officer "must assist claimants, in part by following up on potentially favorable lines of inquiry and in part by

helping claimants present their evidence in its best light." *Id.* at 466. In all events, we noted, the hearings officer "has broad discretion in how to carry out [that] duty." *Id.*

In this case, it is not clear to us that *Berwick* even applies. Unlike the hearings officer in that case, the ALJ in this case is not an employee of DMV but rather is drawn from a centralized panel of administrative law judges who are charged by law with the responsibility of impartiality and fairness. Or Laws 2003, ch 75, § 5. Unlike the hearings officer's decision in *Berwick*, the ALJ's decision in implied consent hearings is final and appealable.

But even assuming for the sake of argument that *Berwick* does apply, petitioner does not explain—and we do not understand—how the ALJ in this case abused her discretion. To the contrary, *sua sponte*, the ALJ noticed the reference in one of the arresting officer's reports to a request for a lawyer. She asked the other officer whether such a request had been made, and the officer replied that he did not hear such a request. The ALJ asked petitioner whether he had asked for a lawyer, *and petitioner said no*. In short, the ALJ pursued the line of inquiry until it was clear that petitioner himself denied asking for a lawyer. At best, the record as developed by the ALJ produced conflicting evidence. Under *Berwick*, an ALJ may have an obligation to assist a litigant in "following up on potentially favorable lines of inquiry." 74 Or App at 466. That is precisely what the ALJ in this case did.

In short, petitioner failed to raise the issue whether a request to consult with counsel vitiated his refusal to consent to a blood test. He therefore cannot raise the issue on judicial review, and the trial court erred in reaching a contrary conclusion.

Reversed.