Argued and submitted June 27, reversed and remanded with instructions to reinstate order suspending driving privileges November 1, 2006, petition for review denied February 6, 2007 (342 Or 344)

In the Matter of the Suspension of
the Driving Privileges of
Kathleen Jean Davis.

KATHLEEN JEAN DAVIS,
*Respondent,*

*v.*

DRIVER AND MOTOR VEHICLE
SERVICES DIVISION (DMV),
a division of the Department of Transportation,
*Appellant.*

0503-03083; A129207

146 P3d 378

Denis M. Vannier, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Wayne Mackeson argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Rasmussen, Judge pro tempore.

LANDAU, P. J.

## LANDAU, P. J.

At issue in this case is whether an individual arrested for driving under the influence of intoxicants (DUII) who declines to take a breath test until a police officer repeats the rights and consequences warning required by law has refused to take the test. An administrative law judge (ALJ) acting on behalf of the Driver and Motor Vehicle Services Division (DMV) concluded that petitioner, who demanded that the officer do so, had refused to take a breath test and, on that basis, DMV suspended her driving privileges. The trial court disagreed and set aside the suspension. We agree with DMV and therefore reverse.

Although this appeal is from the circuit court, we review the order directly for substantial evidence and errors of law. ORS 813.450(4); *Wahlgren v. DMV*, 196 Or App 452, 454, 102 P3d 761 (2004). In this case, the relevant facts are uncontested, so the ultimate question is a legal one, namely, whether in light of those uncontested facts, the ALJ correctly concluded that petitioner refused the breath test.

Petitioner was arrested for DUII after she had rear-ended another vehicle and displayed signs of intoxication to officers at the scene. Portland Police Officer Hoesly took petitioner to the police station for further investigation. Petitioner was placed in a holding cell, where she was permitted to have a private telephone conversation with an attorney.

Hoesly then read petitioner a form describing her rights and the consequences of refusing to take a breath test, as provided in ORS 813.130. There is no dispute as to the accuracy or adequacy of the form or Hoesly's reading of it. Petitioner responded by asking to personally examine the card from which Hoesly read the rights and consequences notice. Hoesly denied her request. Petitioner then asked Hoesly to read the notice a second time. Hoesly denied that request as well. Petitioner stated that she would not take the breath test unless Hoesly read the notice to her another time. Hoesly declined.

Hoesly then prepared the breath test apparatus and warned petitioner that he would mark her down as a

"refusal" if she did not submit to the test. Petitioner replied that she would not submit to the test until Hoesly repeated the rights and consequences information to her. Hoesly took her response to be a refusal.

Based on the foregoing facts, the ALJ concluded that petitioner had refused to submit to a breath test and ordered the suspension of her driving privileges pursuant to ORS 813.410. Petitioner sought review in the circuit court, which ordered reinstatement of petitioner's driving privileges on the ground that she had not refused to take the breath test.

On appeal, DMV argues that the trial court erred in ordering reinstatement of petitioner's driving privileges. According to DMV, the ALJ correctly concluded that petitioner had refused to take the breath test. DMV argues that the ALJ did not err in concluding that petitioner had refused the breath test because, under the applicable case law, anything substantially short of "unqualified, unequivocal consent" amounts to refusal. Petitioner responds that her insistence that Hoesly reread the rights and consequences notice should not be taken as a refusal without proof that rereading the notice would have substantially delayed the test process. We agree with DMV.

■    In *Moore v. Motor Vehicles Division*, 293 Or 715, 722, 652 P2d 794 (1982), the Supreme Court explained that the general rule in Oregon is that, "if an arrested driver is requested to submit to a breath test and, after the statutorily required advice is given he does not promptly do so, he has refused to submit." That general rule is subject to "a flexible regard for arrested persons' freedom to communicate," that is, communicate with another person, such as an attorney. *Id.* But "a refusal to submit need not be explicit." *Id.* Any attempts to delay or impose conditions on testing amount to a refusal of the test. *See, e.g., Rabbani v. DMV*, 187 Or App 272, 65 P3d 1130 (2003) (despite the petitioner's later request to take a test, he refused by declining to take the test when offered).

Our decision in *Caldeira v. DMV*, 181 Or App 168, 45 P3d 489, *rev den*, 334 Or 631 (2002), is instructive in that regard. In that case, the petitioner was arrested for DUII and taken to the police station, where he was asked to submit to a

breath test. The petitioner responded that he would prefer to take a blood test. The officer asked a second time for the petitioner to consent to the breath test, and the petitioner replied that he would prefer to take a blood test. When asked a third time to consent to the breath test, the petitioner said that he did not understand why he could not take a blood test. The officer then marked the petitioner as having refused the breath test. At that point, the petitioner said that he wanted to take the breath test and that he had not intended to refuse to submit. *Id.* at 170. The ALJ in that case concluded that, on those facts, it was clear that the petitioner had refused. On appeal, the petitioner argued that the ALJ had erred in arriving at that conclusion because there was no evidence that he had actually refused to take the breath test. We agreed with the ALJ, commenting that "anything substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so." *Id.* at 171 (quoting *Lundquist v. Motor Vehicles Div.*, 23 Or App 507, 512, 543 P2d 29 (1975)) (internal quotations marks, some citations omitted).

In this case, as in *Caldeira*, petitioner refused the test by evading the officer's request rather than providing "unqualified, unequivocal assent." Petitioner insists that *Caldeira* is distinguishable because her request for further reading did not fall "substantially" short of such assent. Citing *Moore*, she asserts that, because there is no evidence that complying with her request would have impeded effective administration of the breath test, her request could not be treated as a refusal. She explicitly disclaims any argument that there can be no refusal unless she understood the rights and consequences; her argument is that, under *Moore*, even if she understood the rights and consequences notice the first time that it was read to her, there simply was no good reason for the officer to have refused to read it again.

*Moore* does not aid petitioner. In that case, the court held that the general rule requiring unqualified, unequivocal consent gives way to a limited exception to accommodate a request to communicate with another person, such as counsel, so long as the communication would not unreasonably delay the testing. 293 Or at 722-23. The court explicitly grounded that exception on its concern that an unjustified

failure to afford a reasonable opportunity to speak to counsel would deprive the arrested driver of a liberty interest. *Id.* at 723. In recognizing that exception, the court relied on *State v. Newton*, 291 Or 788, 807, 636 P2d 393 (1981), *overruled in part on other grounds by State v. Spencer*, 305 Or 59, 750 P2d 147 (1988), in which it had discussed the importance of an arrested person's liberty interest in "promptly communicat[ing] beyond confinement" and in which the court had observed that "incommunicado incarceration is regarded as inconsistent with American notions of ordered liberty."

In this case, the limited exception that the court recognized in *Moore* does not apply. Petitioner was afforded a reasonable opportunity to communicate with an attorney. In fact, she took advantage of that opportunity and had a private conversation with counsel by telephone before being asked to consent to the breath test.

Petitioner acknowledges that she was able to consult with counsel before being asked to consent to the breath test. She nevertheless argues that *Moore* applies because the court in that case couched the exception in terms of accommodating a broader "freedom to communicate." 293 Or at 722. According to petitioner, her request implicated a liberty interest in "communicating with the citizens of the State of Oregon" by reading for herself, or having read to her a second time, the rights and consequences notice.

If we understand that argument correctly, it is one that petitioner did not preserve. But, in any event, in *Moore* and *Newton*, the Supreme Court made clear that its concern with an individual's "freedom to communicate" involved the right to communicate with counsel and not to be held "incommunicado." *Moore*, 293 Or at 272; *Newton*, 291 Or at 807. Nowhere did the court suggest a concern for a more metaphysical communication with the citizenry at large by means of a recapitulation of the rights and consequences notice that the officer already had provided.

DMV did not err in concluding that petitioner refused to submit to a breath test and in ordering the suspension of petitioner's driving privileges.

Reversed and remanded with instructions to reinstate order suspending driving privileges.