Argued and submitted March 12, reversed and remanded with instructions to reinstate order suspending petitioner's driving privileges June 23, 2010

In the Matter of
the Suspension of the Driving Privileges of

COLLEEN K. FITZPATRICK,
*Petitioner-Respondent,*

*v.*

OREGON DEPARTMENT OF TRANSPORTATION,
DRIVER AND MOTOR VEHICLE
SERVICES DIVISION (DMV),
*Respondent-Appellant.*

Coos County Circuit Court
08CV0343; A140092

235 P3d 701

Michael A. Casper, Assistant Attorney General, argued the cause for appellant. With him on the brief were John R. Kroger, Attorney General, and Erika L. Hadlock, Acting Solicitor General.

Nick C. Nylander argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

The Oregon Department of Transportation, Driver and Motor Vehicle Services Division (DMV), appeals a circuit court judgment setting aside a DMV order suspending petitioner's driving privileges for refusing to take a breath test. DMV argues that the court erred in holding that petitioner did not refuse to take the breath test. We agree and reverse and remand.

Officer Merritt, of the North Bend Police Department, arrested petitioner for driving under the influence of intoxicants (DUII). ORS 813.010. Merritt told petitioner that he needed to take her to the police station to give her an opportunity to take a breath test. At the station, Merritt told petitioner that he was going to read her the "implied consent" and "give [her] the opportunity to blow," and she could "decide either way, yes or no."[1]

As required by ORS 813.100(1), Merritt informed petitioner of the rights and consequences relating to breath tests, including that, if she refused or failed the test, her driving privileges would be suspended and that the refusal or failure could be used against her in a DUII prosecution. ORS 813.130(2)(a), (c), (d).[2] Merritt then asked petitioner whether she would take the breath test. Petitioner said that she was confused. She asked several questions about the consequences of failing the test. Merritt and another officer answered petitioner's questions, explaining that, if petitioner failed the test, she would be issued a temporary permit, which would be valid for 30 days, and her driving privileges would be suspended for 90 days after that. They also explained that she could apply for a hardship permit to drive during the suspension period.

Merritt asked petitioner, for the second time, whether she would take the breath test. Petitioner replied, "I don't know; I don't know how to answer you." Merritt asked

---

[1] An audio recording of Merritt's entire encounter with petitioner was admitted into evidence. All quoted statements by Merritt and petitioner are from that recording.

[2] The minimum suspension for refusing a breath test (one year) is longer than the suspension for taking and failing a breath test (90 days). ORS 813.420. Both suspensions are separate from a suspension for a DUII conviction.

petitioner whether there was anyone she wanted to call for advice. Petitioner replied, "At midnight?" Merritt said, "I'm just offering you, I can't, I'm just trying to help out here." Petitioner replied, "I don't think so, with all due respect." Merritt said, "No problem, you don't have to, that's what the question's for."

Merritt asked petitioner, who had been standing, to sit down. Petitioner refused and began to argue with Merritt. After repeatedly being told to sit, petitioner sat. Merritt registered a refusal on the breath test machine and told petitioner that he was going to issue her citations for DUII and for refusing the breath test.[3] Petitioner objected, asserting that Merritt had not given her the option of taking the breath test and that she did not "turn down the option." Merritt did not give petitioner another chance to take a breath test. He issued her the citations and a notice that her driving privileges would be suspended.

Petitioner requested a hearing on the suspension. An administrative law judge (ALJ) conducted the hearing. The ALJ found that Merritt gave petitioner "ample opportunity" to agree to take a breath test and held that petitioner's "failure to promptly provide an unqualified, unequivocal assent to a breath test request, made twice," constituted a refusal. The ALJ issued a final order directing DMV to suspend petitioner's driving privileges.

Petitioner sought review of the ALJ's order in circuit court. ORS 813.450 (authorizing circuit court review of DMV suspension orders). The court reversed, holding that, because petitioner had been cooperative and had given no prior indication that she would refuse the breath test, Merritt should have either clarified whether petitioner intended to refuse the test or given her an ultimatum and made a third request. The court ruled:

"(1) when a generally cooperative defendant, (2) who has given no prior indication of an intent to refuse to submit to a breath test, (3) asks relevant questions about her rights

---

[3] "[R]efusal to take a breath test" is a traffic offense, punishable by a fine, which is "in addition to any other consequence prescribed by law for refusal to take a breath test." ORS 813.095 (2007).

and the consequences of a refusal after being advised of them by the officer, (4) for a brief period of time, that defendant should not be found to have refused the breath test without either responding in the negative or having been warned that she must give a direct answer to the request or be considered a refusal."

(Emphasis omitted.) The court entered a judgment setting aside petitioner's suspension. This appeal by DMV followed.

Although this is an appeal from the circuit court's judgment, we review the ALJ's order directly. ORS 813.450(4); *Davis v. DMV*, 209 Or App 39, 41, 146 P3d 378 (2006), *rev den*, 342 Or 344 (2007). Because petitioner did not dispute the ALJ's findings of fact in the circuit court, we are bound by those findings. *Meltebeke v. Bureau of Labor and Industries*, 322 Or 132, 134, 903 P2d 351 (1995). We review the ALJ's legal conclusion—that petitioner refused the breath test—for legal errors. *Davis*, 209 Or App at 41.

■■ Under Oregon's "implied consent" statutes,[4] DMV must suspend a person's driving privileges if the person is arrested for DUII and refuses to submit to a breath test after being advised of the rights and consequences relating to breath tests. ORS 813.100(3); ORS 813.410. For the purposes of the implied consent statutes, "a refusal to submit need not be explicit." *Moore v. Motor Vehicles Division*, 293 Or 715, 722, 652 P2d 794 (1982).[5]

---

[4] The implied consent statutes, ORS 813.095 - 813.136, are intended to encourage drivers who have been arrested for DUII to submit to tests, including blood, breath, and urine tests. *See, e.g., State v. Weishar*, 78 Or App 468, 477, 717 P2d 213, *rev den*, 301 Or 338 (1986) ("Since its inception, Oregon's implied consent statute has contained various sanctions designed to coerce submission to a breath test."). Under the statutes, a person who drives on highways or premises open to the public in Oregon is "deemed to have given consent" to chemical tests under certain circumstances. ORS 813.100(1). Refusal to submit to a properly requested test results in a suspension of driving privileges. ORS 813.100(3). In addition, the refusal may be admitted against the person in any criminal or civil action or proceeding arising out of allegations that the person was driving under the influence of intoxicants. ORS 813.310. The consequences of refusing a test, as well as the requirement that arrested drivers be advised of the consequences, are "intended to induce submission" to tests. *State v. Nguyen*, 107 Or App 716, 720, 813 P2d 569, *rev den*, 312 Or 528 (1991) (so stating with respect to breath tests).

[5] In *Moore*, the Supreme Court interpreted *former* ORS 487.805(1) (1981), which provided that drivers shall be deemed to have given consent to breath tests if arrested for DUII, *former* ORS 487.805(2) (1981), which set out request and refusal procedures, and *former* ORS 482.540 (1981), which required the Motor

"The word 'refusal,' as used in the Implied Consent Act, means nonsubmission. Thus, if an arrested driver is requested to submit to a breath test and, after the statutorily required advice is given he does not promptly do so, he has refused to submit. The refusal is implicit in his conduct.

"On the other hand, there is not necessarily a refusal every time an arrested person fails to snap to like a recruit at the command of a drill sergeant. Otherwise, the Act would be more an administrative snare for the non-alacritous than an evidence-gathering process for release or prosecution."

(Citation omitted.)

In keeping with *Moore*, this court has held that a person's failure to promptly agree to take a breath test constitutes a refusal. *Caldeira v. DMV*, 181 Or App 168, 45 P3d 489, *rev den*, 334 Or 631 (2002). In *Caldeira*, an officer arrested the petitioner for DUII, advised him of the implied consent rights and consequences, and asked him whether he would take a breath test. The petitioner said that he would prefer to take a blood test. The officer told the petitioner that a blood test was not an option and asked the petitioner a second time whether he would take a breath test. The petitioner again said that he would prefer to take a blood test. The officer told the petitioner that he needed a "yes or no" answer and asked the petitioner a third time whether he would take a breath test. The petitioner shook his head and said that he did not understand why he could not take a blood test. The officer registered a refusal on the breath test machine and told the petitioner that he had done so. The petitioner immediately replied that he had not intended to refuse the breath test.

On appeal, we held that the petitioner had refused the breath test because "anything substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so." 181 Or App at 171 (internal quotation marks omitted).

---

Vehicles Division to suspend a driver's privileges if the driver refused a breath test. Since *Moore*, those provisions have been repealed, Or Laws 1983, ch 338, § 978; they are now codified at ORS 813.100, ORS 813.130, and ORS 813.410, and have been amended in ways that do not affect our analysis.

The petitioner's argument that he had not refused the test was "premised on a misunderstanding that the refusal, rather than the assent, must be unequivocal." *Id.*; *see also Davis*, 209 Or App at 42 (driver refused a breath test when, in response to an officer's third inquiry into whether driver would submit to the test, driver did not agree to take the test but instead repeated a request that the officer had already denied); *State v. Gardner*, 52 Or App 663, 666, 629 P2d 412, *rev den*, 291 Or 419 (1981) (driver refused a breath test when she remained silent after an officer asked her whether she would take the test and told her that her continued silence would constitute a refusal).

In this case, as in *Caldeira*, petitioner refused the breath test. Once Merritt had advised petitioner of the rights and consequences as statutorily required, answered all of her questions, and given her an opportunity to call someone for advice, petitioner had to either agree to take the breath test or face the consequences of a refusal. She had been asked twice whether she would take the test, and she failed to promptly agree to do so. Her conduct fell "substantially short of an unqualified, unequivocal assent." *Caldeira*, 181 Or App at 171.

The trial court held that, because petitioner had been cooperative and had not previously indicated that she would refuse to take the test, Merritt should have clarified whether petitioner intended to refuse. In *Caldeira*, the officer gave the petitioner an ultimatum. *See also Davis*, 209 Or App at 41-42 (officer asked driver three times if she would take a breath test and told driver that if she did not submit to a test he would mark her down as having refused); *Gardner*, 52 Or App at 666 (officer warned driver that her continued silence would constitute a refusal). Giving ultimatums may be the best practice. They may reduce disputes and litigation over whether a driver actually refused to take a breath test. They may also advance the goal of the implied consent statutes, which is to secure evidence, because they will reduce the incidence of inadvertent refusals. But nothing in the implied consent statutes or the case law interpreting the statutes requires officers to give ultimatums. Under the implied consent statutes, the burden is on drivers to articulate a clear assent, not on officers to secure a clear refusal.

■  Notably, petitioner in this case was not required to "snap to like a recruit at the command of a drill sergeant." *Moore*, 293 Or at 722. Petitioner had the opportunity to ask clarifying questions, to call someone for advice, and to make a decision. The fact that petitioner did not know what to decide does not mean that she did not have a reasonable opportunity to decide. After Merritt read petitioner the implied consent rights and consequences, answered all of her questions, and asked her a second time whether she would take the breath test, petitioner answered that she did not know and that she did not want to call anyone to help her decide. That was a refusal for the purposes of ORS 813.100.

Reversed and remanded with instructions to reinstate order suspending petitioner's driving privileges.