Argued and submitted December 1, 2009, affirmed September 1, 2010

Mel STEWART,
*Plaintiff-Appellant,*

*v.*

STATE OF OREGON,
acting by and through

DIVISION OF STATE LANDS,
*Defendant-Respondent,*

*and*

CITY OF CORVALLIS,
*Defendant.*

Benton County Circuit Court
9510026; A136441

239 P3d 263

John W. Shonkwiler argued the cause for appellant. On the briefs were William F. Hoelscher and Hoelscher & Associates, PC.

Stephanie L. Striffler, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Schuman, Presiding Judge, and Ortega, Judge, and Sercombe, Judge.

SCHUMAN, P. J.

### SCHUMAN, P. J.

This case is the most recent chapter in a land use dispute that goes back more than 17 years, dealing with plaintiff's attempt to obtain a permit to build residential units on two acres of land that he owned in Benton County. The trial court, over plaintiff's objection, granted the Department of State Land's (DSL) motion to bifurcate the trial, with the issue of liability for a "taking" tried to the court and, if necessary, the issue of damages tried to a jury.[1] On the first day of the bench trial, plaintiff (acting *pro se*, as he had through much of the litigation) refused to put on evidence, arguing that to do so would waive his right to a jury trial. DSL then moved to dismiss the case for insufficiency of the evidence, ORCP 54 B(2), and the court granted the motion. Plaintiff appeals, raising 13 assignments of error, most of which we reject without discussion. The assignments of error that we do discuss relate to the denial of a jury trial and the grant of DSL's motion to dismiss. We affirm.

The property at issue is a two-acre parcel that was previously part of a 41-acre parcel annexed to the City of Corvallis (the city) in 1981. Plaintiff sold the larger parcel sometime before 1982 to a purchaser who planned to develop the property. That developer obtained approval for a residential development. The permit provided that the two-acre parcel at issue in this case was to be a park, and it was zoned by the city for that purpose. Later, the city brought foreclosure proceedings against the developer for not paying certain assessments. The city then deeded the two-acre parcel back to plaintiff.[2]

The conflict between DSL and plaintiff began in 1992. A portion of the two-acre parcel had been designated by DSL as a wetland. Therefore, before it could be developed, plaintiff had to obtain a "wetland removal-fill" permit. ORS

---

[1] In this matter, the state acted through the Department of State Lands, formerly known as the Division of State Lands. Because some of the procedural history of the case involves agency hearings, we refer to defendant throughout as DSL.

[2] According to plaintiff, the city had to deed back the parcel to correct an unlawful foreclosure. There is no evidence regarding that fact in the record, and neither party appears to believe that it is relevant; for that reason, we do not discuss it further.

196.810(1)(a); ORS 196.800. *Former* ORS 196.825(5) (1991) provided, in part, that

> "[t]he director [of DSL] shall impose, as conditions to any permit, general authorization or wetland conservation plan, measures to provide mitigation for the reasonably expected adverse impacts from project development."

In his first permit request in 1992, plaintiff argued that the parcel no longer had the "functional attributes" of a wetland. Therefore, he contended, his proposed development would not have an adverse impact on any wetland, and no mitigation was necessary. DSL disagreed and denied the permit, concluding that,

> "until a specific plan to replace lost resource values is developed [DSL] cannot conclude the proposal conforms with public uses of waters of the state [and with *former* ORS 196.825(5) (1991)]. * * * Finally we do not have evidence [that] the proposed use is consistent with the city of Corvallis comprehensive plan."

Plaintiff proposed a mitigation plan under which he would pay $1,000 per acre into a fund for enhancement of a nearby wetland and requested that DSL reconsider his application with that condition. DSL again denied the permit, concluding that

> "[p]ayment of $1,000 per acre into an enhancement fund * * *, in lieu of providing a project proposal to actually and directly replace lost wetland functions and values, will not meet the mitigation criterion at [*former*] ORS 196.800(10)(e) [(1991)] of 'compensating for the impact by replacing or providing comparable substitute or water resources.'"

DSL also requested that plaintiff hire a wetland consultant in order to determine the proper mitigation plan.

Instead, plaintiff requested a contested case hearing to challenge the order. The director of DSL issued a final order without a hearing, concluding that, because there were no disputed issues of fact, a hearing was not necessary. The director concluded that

> "it was not unreasonable for DSL to refuse to rely upon [plaintiff's] opinion alone [as to the value of the wetland],

and to require the expert opinion of a wetlands consultant. Without a reliable opinion on reasonably expected adverse impacts, DSL has insufficient information available to determine whether the provision in [plaintiff's] plan * * * would provide for 'comparable substitute wetland.' "

Plaintiff appealed the denial to this court. We affirmed without opinion, and the Supreme Court denied review. *Stewart v. Division of State Lands*, 126 Or App 314, 868 P2d 1373 (1993), *rev den*, 319 Or 81 (1994).

In 1995, after the denial of the first permit had been decided, plaintiff brought this action in circuit court against DSL and the city alleging inverse condemnation. DSL and the city moved for summary judgment, arguing that plaintiff did not have a right to residential development because the land was designated as a park and, further, that he had not exhausted his administrative remedies. The court granted the state's motion, concluding:

"The fundamental 'bottom line' issue raised by the motions is whether, because [plaintiff] only owns land legally designated as a park, he really has a claim for damages to his property for inverse condemnation * * *. The facts are undisputed. [Plaintiff] has no LEGAL right to have the park land re-zoned for a higher use. The question, therefore, is whether his hopes to have it re-zoned, which to date have been frustrated by the wetlands issue, can be the basis for a claim of damages on any of the theories alleged in the complaint.

"The Court could probably decide the motion for summary judgment on this basis alone. I am, however, reluctant to do so for the following reasons: 1) I would like to hear further argument on the basic issue discussed above; and 2) the Court is going to grant the city and State's motion for summary judgment on the grounds that [plaintiff] did not exhaust his administrative remedies. The Court is inclined to abate this lawsuit to allow [plaintiff] six months to pursue his administrative remedies. If he resolves the wetland issue, the lawsuit would become moot. If not, the Court would be willing to revisit the issue of whether [plaintiff] can show that he has a claim for damages for his park land. * * *."

Plaintiff requested that the case be abated while he pursued available administrative remedies, and the court granted the request.

In 1995 and 1997, plaintiff submitted major development modifications and tentative subdivision plans to the city. The city denied a permit, including these modifications, because they did not meet the requirement that the two-acre parcel be dedicated as a park. The city planning commission upheld those decisions.

In 1998, plaintiff again applied to DSL for a wetland removal-fill permit. This time, DSL denied the permit because the "project did not meet the local land use compatibility requirements" that the parcel could be developed only as a park. Plaintiff filed exceptions to the order, and the director of DSL issued a final order affirming DSL's decision. Plaintiff did not appeal the final order to this court.

In April 2004, plaintiff sold the property to the city. He then resumed his inverse condemnation claim in circuit court, dismissing the city and pursuing the claim against only DSL. He filed a third amended complaint, changing his inverse condemnation claim to a temporary takings claim and adding claims for a declaratory judgment, violations of procedural due process and equal protection under 42 USC section 1983, and conspiracy under 42 USC section 1985. DSL objected to the motion to amend or, in the alternative, moved to dismiss the declaratory judgment, due process, equal protection, and conspiracy claims. The court allowed the amended complaint but also granted the state's motion to dismiss, leaving only the temporary takings claim.

The state again moved for summary judgment on various grounds, including that DSL did not "take" from plaintiff any ability to develop the property for housing, because the only permitted use of the property was as a park. The court denied the motion for summary judgment, concluding there were disputed issues of material fact—but did not state what facts were in dispute.

Ultimately, plaintiff filed a fifth amended complaint, which included temporary takings claim and a claim under 42 USC section 1983 for retaliation. DSL moved for summary

judgment on the retaliation claim, and plaintiff moved for summary judgment on his inverse condemnation claim. The court granted DSL's motion and denied plaintiff's, leaving the temporary takings claim for trial.

At that point, DSL moved to bifurcate the trial, arguing that bifurcation would be efficient because plaintiff was not entitled to a jury trial for the takings issue, and a jury would be necessary only if the court concluded that there was a taking as a matter of law. The court granted the bifurcation and bench trial over plaintiff's objection. On the day of trial, plaintiff, appearing *pro se*, refused to put on evidence, arguing that to do so would waive his right to a jury trial. The state then moved for dismissal under ORCP 54 B(2) for insufficiency of the evidence. The court granted the dismissal.

On appeal, plaintiff raises 13 assignments of error, all but two of which we affirm without discussion. We write only to address plaintiff's first assignment of error, where he argues that the trial court erred in granting the state's motion to try the liability part of the takings claim to the bench, and his third assignment of error, in which he argues that the court erred in granting the state's motion to dismiss under ORCP 54 B(2). We address each in turn.

In his brief to this court, plaintiff's argument appears to be that: (1) under *Coast Range Conifers v. Board of Forestry*, 339 Or 136, 155, 117 P3d 990 (2005), a property owner is entitled to a jury trial on any disputed historical facts that underlie a court's legal conclusion that a particular state action results in a taking; (2) his complaint alleges a "temporary taking"; (3) under *Lucas v. South Carolina Coastal Council*, 505 US 1003, 112 S Ct 2886, 120 L Ed 2d 798 (1992), the existence or nonexistence of economically viable use post-regulation, as well as the question of whether a person had investment-backed expectations when he or she acquired the allegedly taken property, are material facts in a temporary takings claim; (4) under *Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 US 687, 720-21, 119 S Ct 1624, 143 L Ed 2d 882 (1999), whether government action deprives a property owner of all economically viable use of his or her property is a fact question; and (5) therefore the court erred

in granting the state's motion to try the takings issue to the court.

■    There are numerous problems with this argument, not the least of which is that we have had to reconstruct it from scattered assertions in plaintiff's brief, the most important of which appears only as an unelaborated assertion in a three-sentence footnote.[3] For example, *Monterey* deals with a claim brought under 42 USC section 1983, and the court expressly notes that the opinion "do[es] not address the jury's role in an ordinary inverse condemnation suit." 526 US at 721. The fatal flaws, however, are more elementary. They stem from the fact that plaintiff's position in the case was that, by imposing a mitigation requirement, DSL effectively prevented him from developing the parcel for residential purposes. DSL's position was that, because plaintiff's property was encumbered with a restriction requiring that its only permissible use was as a park, DSL's denial of a permit to develop residential units never "took" anything in the first place. Thus, plaintiff's first assertion—that he had investment-backed expectations—resolves into the question of which expectations matter: the ones plaintiff had when he bought the unencumbered property in 1982 to develop residential units, or the ones he had when he reacquired the property from the city by a deed clearly limiting the parcel's use and precluding residential development. That is a purely legal question.[4]

■    Likewise, the question of whether DSL deprived plaintiff's property of all economic value depends, in the first instance, on whether DSL's denial of a permit to build residential property on the parcel can be said to deprive plaintiff

---

[3] That footnote reads, verbatim (including bold and underlining):

"Under Plaintiff Lucas Theory Plaintiff must plead and prove that 1) That Stewart had a reasonable investment back expectation to build residential housing on the date he purchases the site, and 2) That the State regulation deprived him of all substantial economic use of the property. **Each of these are fact questions. These are fact questions that Stewart has a absolute right to have decided by a jury.**"

[4] It is also worth noting that plaintiff nowhere presents any authority for, or argument supporting, the proposition that the existence of investment-backed expectations—one factor in the so-called *Penn Central* balancing test, *Penn Central Transp. Co. v. New York City*, 438 US 104, 98 S Ct 2646, 57 L Ed 2d 631 (1978)—is relevant to a "temporary takings" claim under *Lucas*, 505 US 1003.

of anything when, according to the deed conveying the property to plaintiff, the parcel could not be used for that purpose in any event. That, too, is a purely legal question.

■■  Further, even if, as plaintiff alleges, the questions of investment-backed expectations and substantial economic value are fact issues that are material to a temporary takings claim, plaintiff does not demonstrate that they are *disputed* issues of fact. As the proponent of the position that he was constitutionally entitled to a jury trial, plaintiff had the burden of producing some evidence of an essential element of that claim: *disputed* fact issues. *See State v. Kanuch*, 231 Or App 20, 217 P3d 1082 (2009) (proponent of position has burden of persuasion and obligation to make a record). Plaintiff's brief nowhere does so by, for example, citing his own assertions regarding his expectations and the property's post-regulation value and then citing contrary assertions by DSL. We have also examined all of the places in the voluminous record that plaintiff cites in the "preservation of error" section of this assignment of error, and those documents also fail to demonstrate that the issues plaintiff identifies were disputed at trial.

> "We have repeatedly emphasized that it is not this court's obligation 'to search the record to find the error.' ORAP 5.45(4)(c); *see, e.g., Wahlgren v. DMV*, 196 Or App 452, 457, 102 P3d 761 (2004); *Resources Northwest, Inc. v. Crothers*, 153 Or App 24, 26-27, 955 P2d 763 (1998). Further:
>
>> " '[I]t is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself.'
>
> "*Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 701 n 2, 64 P3d 1193, *adh'd to on recons*, 187 Or App 472, 68 P3d 259 (2003)."

*Corcoran v. Board of Nursing*, 197 Or App 517, 527, 107 P3d 627 (2005). We therefore reject plaintiff's argument that he was constitutionally entitled to a jury trial.

■    We also reject plaintiff's argument that the court erred in dismissing his case under ORCP 54 B(2). The argument has several subarguments, only two of which merit discussion. He first argues that the court erred because DSL had the burden to demonstrate that the regulation met the rough proportionality test laid out in *Dolan v. City of Tigard*, 512 US 374, 114 S Ct 2309, 129 L Ed 2d 304 (1994), and *Nollan v. California Coastal Comm'n*, 483 US 825, 107 S Ct 3141, 97 L Ed 2d 677 (1987). Plaintiff confuses the burden of proof with the burden of putting on a *prima facie* case. No matter who has the burden to prove certain elements or defenses of a claim, the plaintiff must put on evidence to bring a claim in the first place. Plaintiff declined the opportunity to do so. Accordingly, we reject his first argument.

■    Second, plaintiff argues that dismissal was impermissible because the trial court did not make special findings as required by ORCP 54 B(2).[5] That rule provides that, "[i]f the court renders judgment of dismissal with prejudice against the plaintiff, the court shall make findings as provided in Rule 62." As the trial court pointed out, no party made a demand for special findings. Plaintiff argues that ORCP 54 B(2), standing alone, requires the court to make special findings without a request from the parties. But that is not a correct reading of the statute. ORCP 62 requires the party to ask the court to make special findings: "Whenever any party appearing in a civil action tried by the court so demands prior to the commencement of the trial, the court shall make special findings * * *." ORCP 62 A; *Samuels v. Key Title Company*, 63 Or App 627, 631, 665 P2d 362, *rev den*, 295 Or 773 (1983). Therefore, the general findings of fact made by the trial court were sufficient in this case.

Affirmed.

---

[5] The court made the following findings:

"1. Neither party has asked for special findings pursuant to ORCP 62.

"2. At trial, this Court gave plaintiff an opportunity to present evidence in support of his case, and plaintiff declined.

"3. The sole issue for trial was plaintiff's takings claim against defendant.

"4. Plaintiff rested without presenting any evidence in support of his takings claim against defendant.

"5. After plaintiff rested, defendant moved for dismissal with prejudice pursuant to ORCP 54 B(2)."