Argued and submitted January 17, 2019, affirmed June 17, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*
*v.*

JOSE SANCHEZ-CACATZUN,
*Defendant-Appellant.*

Washington County Circuit Court
17CR01224; A165184

468 P3d 964

Defendant appeals a judgment of conviction for criminal driving while suspended or revoked. Defendant assigns error to the trial court's refusal to let him argue to the jury that he did not receive adequate notice of the suspension because the oral notice that he received of the suspension was given to him in a language that he did not understand. Defendant also assigns error to the trial court's refusal to provide a jury instruction that would have defined "notice" for purposes of ORS 811.180(1)(b). *Held*: Because defendant challenges only the oral information that he received from the officer, and that information did not include information about his license suspension, any error in preventing him from making that argument to the jury was harmless. Further, defendant was not entitled to receive his proposed jury instruction because it was not a correct statement of the law.

Affirmed.

Eric Butterfield, Judge.

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Christopher A. Perdue, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Powers, Presiding Judge, and Egan, Chief Judge, and James, Judge.

EGAN, C. J.

Affirmed.

**EGAN, C. J.**

Defendant appeals a judgment of conviction for criminal driving while suspended or revoked (DWS), ORS 811.182(4)(b).[1] Defendant speaks little English, and he sought to raise as an affirmative defense that he did not receive adequate notice that his license was suspended because he received notice of the suspension only in English. *See* ORS 811.180(1)(b) (2017) (establishing an affirmative defense based on lack of notice of suspension).[2] Defendant assigns error to the trial court's refusal to let him argue to the jury that he did not receive adequate notice of the suspension because the oral notice that he received of the suspension was given to him in a language that he did not understand. Defendant also assigns error to the trial court's refusal to provide a jury instruction that would have defined "notice," for purposes of ORS 811.180(1)(b), as notice that "under the circumstances and conditions would apprise [defendant] of an impending action and afford [defendant] an opportunity to present [his] objections." We conclude that, because defendant challenges only the oral information that he received from the officer, and that information did not include information about his license suspension, any alleged error in preventing him from making that argument to the jury was harmless. Further, we conclude that defendant was not entitled to receive his proposed jury instruction because it would have incorrectly instructed the jury on the law by defining adequate notice under the affirmative defense statute as notice that did not "afford [defendant] an opportunity to present [his] objections." Accordingly, we affirm.

We begin by providing a brief overview of the relevant statutes to provide context to the parties' arguments. When a "person *** operates a motor vehicle upon premises open to the public or the highways [in Oregon, the person]

---

[1] Subsequent to the pertinent events of this case, ORS 811.182 was amended. Or Laws 2018, ch 76, § 13. Because the amendments do not affect our analysis, all references to the statute throughout this opinion are to the current version of the statute.

[2] Subsequent to the pertinent events of this case, ORS 811.180 was amended. Or Laws 2019, ch 312, § 25. All references to the statute throughout this opinion are to the 2017 version of the statute that was in effect at the time of the incident in this case.

shall be deemed to have given consent, subject to the implied consent law, to a chemical test of the person's breath" if the person is arrested for driving under the influence of intoxicants (DUII). ORS 813.100(1). The implied consent law, ORS 813.100(2),[3] provides, in relevant part, that

> "if a breath test under this section discloses that the person, at the time of the test, had a level of alcohol in the person's blood that constitutes being under the influence of intoxicating liquor under ORS 813.300 and the person has been informed of rights and consequences as provided under ORS 813.130, the person's driving privileges are subject to suspension * * *."

Before the breath test is administered, the person "shall be informed of [the] [rights and consequences] as described under ORS 813.130." ORS 813.100(1). Further, if the person fails the breath test, the arresting officer "shall * * * [p]rovide the person with a written notice of intent to suspend" that "informs the person of [rights and consequences] as described under ORS 813.130." ORS 813.100 (2)(b).

DWS is a strict liability offense—the statute does not require proof of any culpable mental state—but "drivers who were not notified of the suspension may raise an affirmative defense under ORS 811.180." *State v. Click*, 305 Or 611, 614, 755 P2d 693 (1988). Relevant to this case, ORS 811.180(1)(b) provides that it is an affirmative defense that

> "The defendant had not received notice of the defendant's suspension or revocation or been informed of the suspension or revocation by a trial judge who ordered a suspension or revocation of the defendant's driving privileges or right to apply."

ORS 811.180 also describes certain circumstances "when the affirmative defenses are not available." ORS 811.180(2). One of those circumstances is if "[t]he defendant was provided with notice of intent to suspend under ORS

---

[3] The relevant sections of the implied consent law referenced in this opinion were amended after the pertinent events of this case. Or Laws 2019, ch 475, §§ 1, 2. Because those amendments do not affect the analysis in this case, all references to the implied consent statutes throughout this opinion are to the current version of the statutes.

813.100," the implied consent law. ORS 811.180(2)(e). In its case-in-chief, the prosecution may offer evidence to establish that an affirmative defense is not available to the defendant. ORS 811.180(2).

Because the notice of intent to suspend form is particularly relevant to the analysis in this case, we set out the form in some detail below. The notice of intent to suspend form, or Implied Consent Combined Report, is a standardized, two-page form. The first page of the form provides information that, as relevant to this appeal, if the person has failed the breath test, the person's "driving privileges will be suspended at 12:01 A.M. on the 30th day after the date of arrest." The first page also indicates the reason for the suspension (breath test refusal or failure) and the duration of the suspension. The second page of the form conveys the information that is required under ORS 813.100 and ORS 813.130, and is split into three sections: "Section I," "Section II," and "Hearing Requests."

The only relevant part of the second page of the implied consent form is Section I, which is further classified by subsections (a) through (i). Those subsections include information about how a person can fail a breath test, that the person's license is "subject to suspension" if the person fails a breath test, and that, if the person fails a breath test, the person is entitled to a hearing to challenge the suspension before the suspension takes effect and the eligibility requirements for a hardship permit. The rights and consequences related to the license suspension on the second page of Section I of the form read:

"**SECTION I (Read to driver in ALL cases)**

"\* \* \* \* \*

"(c)   Your driving privileges will not be suspended if you submit to any test requested and do not fail. If you refuse a test or fail a breath or blood test, your driving privileges are *subject to suspension* for each test refusal or failure. The outcome of a criminal charge for driving while under the influence of intoxicants will not affect the implied consent suspension(s). Suspension for refusing a test is substantially longer than suspension for failing a test."

(Boldface and uppercase in original; emphasis added.) The purpose of informing the person of the rights and consequences of failing or refusing a breath test before it is administered is to "coerce a driver's submission to take the tests; it is not to inform the driver of the specifics of the law." *State v. Cabanilla*, 351 Or 622, 633, 273 P3d 125 (2012).

We now turn to the facts, which, unless otherwise noted, are undisputed. Defendant's native language is K'iche', and he also speaks Spanish. Defendant's comprehension of and ability to speak English is limited.

On October 29, 2016, Officer McCarver arrested defendant for driving under the influence of intoxicants. Defendant failed a breath test, and his license was subsequently suspended. In December, Officer Wolf stopped defendant for a traffic violation and learned that his license was suspended. Defendant was subsequently charged with criminal DWS pursuant to ORS 811.182(4).

Before trial, defendant filed a notice of intent to rely upon the affirmative defense that he did not receive notice that his license was suspended because he received the notice in English, a language that he did not understand. ORS 811.180(1)(b). Defendant conceded that his license was suspended, but he argued that adequate notice under the affirmative defense statute must be consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[4] Accordingly, defendant sought two relevant pretrial rulings. Relying on *Mullane v. Central Hanover Bank & Tr. Co.*, 339 US 306, 70 S Ct 652, 94 L Ed 865 (1950), defendant first requested a special jury instruction defining notice as "notice that under the circumstances and conditions that would apprise the affected individual of an impending action and afford them an opportunity to present their objections." Second, defendant sought to argue to the jury that defendant did not receive adequate notice that his license was suspended because the information that he had received from McCarver was given to him in a language that he did not understand, which left him "in a

---

[4] The Due Process Clause of the Fourteenth Amendment provides that "no[] *** State [shall] deprive any person of life, liberty, or property, without due process of law." US Const, Amend XIV, § 1.

position unable to assert his rights or to challenge the state action." Defendant argued that the statute requires that the person "actually receive notice" in such a way that the person "understand[s] that they do have those rights and consequences."

The state objected to defendant's special instruction and his request to argue lack of notice based on the language barrier. The state argued that, because defendant's affirmative defense based on lack of notice was only available if defendant did not receive the implied consent form, ORS 811.180(2)(e), defendant's lack of notice arguments must be limited to whether he received the form. The state argued that the affirmative defense statute did not allow defendant to make a "collateral attack on the validity of the notice because of the language that it was provided in." The trial court declined to give defendant's requested jury instruction, ruling that "[the] standard instructions [were] adequate," and also denied defendant's motion to argue the language barrier issue to the jury.

At trial, the factual dispute between the parties centered on whether McCarver provided defendant with either verbal or written notice that his license would be suspended because he failed a breath test. McCarver testified that, after defendant was arrested for DUII, McCarver transported defendant to the jail and asked defendant if he would take a breath test. Before administering the test, McCarver read "[(a) through (i)]" of Section I on the second page of the implied consent form.[5] McCarver read Section I on page two of the form "verbatim" in English.

Defendant failed the breath test and, as a result, McCarver filled out page one of the implied consent form, also in English, indicating that defendant had failed a breath

---

[5] On direct examination in the state's case-in-chief, McCarver initially gave confusing testimony when he indicated that he had read the implied consent form to defendant without specifying which page of the form he had read, and implied that what was read to defendant included the information from page one that defendant's license had been suspended. However, his testimony later in the direct examination clarified that he read only the "back of the form," which contains all the information about a defendant's "rights and responsibilities," to defendant. In the state's rebuttal, McCarver further clarified that he read (a) through (i) of Section I on the back of the form.

test and that his license would be suspended at 12:01 a.m., on the 30th day after the date of arrest, for a period of 90 days.

McCarver testified that he physically provided both pages of the implied consent form to defendant. McCarver stated that he did not remember whether he had physically handed defendant the form, but he was "absolutely sure" that he had "provided it" to him. McCarver testified that, when an arrestee is in handcuffs, he "bring[s] the form over to them and *** explain[s] what it is and that it was the form that [he] had just read to them a few minutes prior," and that he would be placing it with their property that gets placed in a bin. McCarver also noted in his report documenting the incident that he had "provided [defendant] with a copy of the Implied Consent form."

Defendant, on the other hand, testified through an interpreter that McCarver did not read the implied consent form to him, tell him that his driver's license would be suspended for 90 days at 12:01 a.m. on the 30th day after the date of his arrest, or show him any form indicating that his license would be suspended. Defendant testified that the only documents that he received when he left the jail were "a white piece of paper that said the date [he] had to go to court" and a paper that "stated the balance of the money on *** the card" they gave him, which included the amount of money he had with him when he arrived at the jail.

Although the trial court had ruled that evidence of the language barrier issue was not admissible, on direct examination, the state elicited testimony from Wolf that there had been "a language barrier" between Wolf and defendant. On cross-examination, Wolf testified that Wolf spoke to defendant in English, but defendant responded to Wolf in what Wolf assumed was Spanish and some English words. Wolf testified that defendant appeared to understand "some English," but that a second officer responded to provide interpretive services for Wolf. Before the second officer arrived, defendant communicated to Wolf that he did not have a driver's license and handed Wolf an "international translation of a driver's license."

During closing arguments, defendant explained that the only issue that the defense was contesting was whether defendant had received notice that his license was suspended. In summarizing the evidence, defendant argued that notice was insufficient because McCarver had read the implied consent form to defendant at 3:30 a.m., and he highlighted the conflicting evidence on whether McCarver had physically given defendant the written notice of intent to suspend. Defendant then argued:

> "I think it's also important that we look at another reason to doubt, which is going to December 30th, the second time that Mr. Sanchez-Cacatzun was arrested. You heard Officer Wolf testify, and you heard how there were language barriers.
>
> "* * * * *
>
> "You can use your common sense and reason to consider those language barriers in determining whether Mr. Sanchez-Cactzun ever—
>
> "* * * * *
>
> "* * * [H]ow that could impact the [inaudible] in this case."[6]

The jury was given the standard jury instruction for the affirmative defense of lack of notice, including when the affirmative defense was not available, which largely mirrored the language of the statute. The jury convicted defendant of driving while suspended.

On appeal, defendant argues that the trial court erred in failing to give defendant's requested jury instruction and limiting defendant's argument because notice under ORS 811.180(1)(b) requires defendant to have had actual notice of his license suspension. And, without actual notice of his license suspension, defendant was entitled to raise the defense. Defendant also argues that notice under ORS 811.180(1)(b) "is due-process notice," and to satisfy due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the

---

[6] During that portion of defendant's argument, the state made two objections, arguing that it was not a proper statement of the law. Defendant responded that the state had opened the door, and the judge overruled both objections.

pendency of the action and afford them an opportunity to present their objections." During oral argument, defendant clarified that he was "attacking purely the oral information that [defendant] received" from the officer and that he was not attacking the written implied consent form.[7] Defendant concedes that, if the jury found that defendant had received the written form, then he would not prevail on the notice issue under ORS 811.180(2)(e). However, because the question of whether the officer provided defendant with the written form was contested and, thus, the jury could find that the officer did not provide defendant with the written form, defendant contends that he should have been allowed to argue to the jury that the oral notice of defendant's suspension was inadequate due to the language barrier.

The state disagrees that the statute requires actual notice, contending that we need only look to subsection (2) of the same statute for evidence of what "notice" in subsection (1) means. And, under ORS 811.180(2)(e), the defense is unavailable if defendant was provided with the written notice of intent to suspend under ORS 813.100 of the implied consent statutes, which do not require actual notice. So, in the state's view, physically handing the form to defendant, so long as the form contains the rights and consequences as required by the implied consent laws, is all that is required to provide defendant sufficient notice under ORS 811.180(1)(b).

The state disagrees that the statute incorporates the due process standard for notice. The state contends that, nonetheless, due process does not require the state to translate notice of license suspensions into a language that the person understands.[8] The state also argues that, even if the court erred, any error was harmless because defendant was nonetheless able to argue the language barrier issue to the jury.

---

[7] Before the trial court, defendant seemed to take the opposite view when he indicated that he was only challenging the written implied consent form and stated that "the very narrow issue that the defense is arguing *** is *** that subsection [(e) of ORS 811.180] requires that notice be given, and all [the defense is] arguing *** is that a document not provided in a language [the person understands] is not notice." However, the record reflects that defendant additionally challenged the information that the officer provided orally.

[8] During oral argument, the state conceded that a defendant may be able to raise an as-applied or facial challenge to the affirmative defense statute.

As a preliminary issue, we understand defendant to be arguing only that the term "notice" in ORS 811.180(1)(b) incorporates the federal standard for adequate notice under the Due Process Clause. *See Mullane*, 339 US at 314 ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."). We do not understand defendant to argue that the affirmative defense statute, as applied to the facts of this case or on its face, violates the Due Process Clause.[9] *See, e.g.*, *City of Eugene v. Lincoln*, 183 Or App 36, 41, 50 P3d 1253 (2002) (explaining that "[a] facial challenge asserts that lawmakers violated the constitution when they enacted the ordinance; an as-applied challenge asserts that executive officials, including police and prosecutors, violated the constitution when they enforced the ordinance"). Accordingly, we limit our analysis to the meaning of "received notice" under ORS 811.180(1)(b).

We begin by addressing whether the trial court erred in prohibiting defendant from arguing to the jury that he did not receive adequate notice of his suspension due to

---

[9] In defendant's brief, he stated that "all of defendant's appellate arguments relate to the interpretation of [the affirmative defense statute.]" However, during oral argument, defendant added that his arguments were "entirely fact-specific" and that he was arguing, on the facts of this case, that the officer should have made an effort to communicate with defendant in Spanish. Defendant stated that he was not arguing that an officer in every case should have to interpret for a particular defendant, but only that whether an officer should have to interpret for a particular defendant is a factual dispute for the jury to decide. Moreover, in response to the state contending during oral argument that an as-applied or facial challenge to the affirmative defense statute was not at issue in this case, defendant responded in rebuttal that he disagreed. Defendant argued that he had raised a due process challenge in the trial court and on appeal, and thus, even if the state is correct about its statutory construction of the affirmative defense statute, defendant preserved his stand-alone due process claim. To the extent that defendant was attempting to raise an as-applied challenge to the affirmative defense statute during oral argument, even assuming that that argument was preserved, we decline to address an undeveloped argument raised for the first time during oral argument. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991) ("Generally, before an appellate court may address whether a trial court committed an error * * *, the adversely affected party must have preserved the alleged error in the trial court and raised the issue on appeal by an assignment of error in its opening brief."); ORAP 5.45(1).

the language barrier. Generally, we review a trial court's ruling to limit argument for abuse of discretion. *State v. Fletcher*, 263 Or App 630, 631, 300 P3d 235 (2014). However, when the court's decision to limit argument is based on a legal determination, as it was in this case, we review the court's decision for legal error. *See State v. Rogers*, 330 Or 282, 310-12, 4 P3d 1261 (2000) (applying legal error standard of review instead of abuse of discretion when challenge was to the trial court's legal ruling to exclude evidence and explaining that discretion "refers to the authority of a trial court to choose among several legally correct outcomes. If there is only one legally correct outcome, then 'discretion' is an inapplicable concept"); *State v. Hunt*, 270 Or App 206, 210, 346 P3d 1285 (2015) ("Statutory construction presents a question of law *** which we review for legal error[.]" (Citations omitted.)); *see also Rogers*, 330 Or at 312 ("If the trial court's decision was within the range of legally correct discretionary choices and produced a permissible, legally correct outcome, then the trial court did not abuse its discretion."); *Fletcher*, 263 Or App at 633-34 (finding that a trial court abuses its discretion when it limits argument based on an incorrect understanding of the law).

The dispute between the parties centers on the meaning of the phrase "received notice" under ORS 811.180(1)(b). Ordinarily, we would examine the statute's text, context, and, if helpful, legislative history to determine the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). However, here, we need not interpret the statute because, for the following reasons, we conclude that any alleged error in preventing defendant from making the specific argument he raises on appeal was harmless.

Under Article VII (Amended), section 3, of the Oregon Constitution, an appellate court must affirm a conviction, notwithstanding any error, if there is "little likelihood that the particular error affected the verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). The court's inquiry

"must focus 'on the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling.' *** That inquiry requires us to examine

the nature of the error that occurred below and the context of that error. *** If the particular issue to which the error pertains has no relationship to the jury's determination of its verdict, then there is little likelihood that the error affected the verdict."

*State v. Gibson*, 338 Or 560, 576, 113 P3d 423, *cert den*, 546 US 1044 (2005) (citations omitted).

In this case, the nature of the error alleged is that the trial court erroneously prevented defendant from presenting an argument to the jury. Specifically, defendant sought to argue that the affirmative defense of ORS 811.180(1)(b) applied because he did not receive adequate notice of his license suspension. The only theory that he sought to advance in support of that proposition was that the oral information the officer provided was in a language that he did not understand.

The problem with defendant's argument is that it is based on an incorrect premise—that the oral information that the officer gave him could constitute "notice" under the statute that defendant's license was suspended. However, the record shows that the information that the officer gave to defendant orally did not include the fact that defendant's license was suspended.

Before administering the test, McCarver testified that he read in English (a) through (i) of Section I of the second page of the implied consent form. Regarding the license suspension, that form states only that a person's license is "subject to suspension" if the person fails a breath test. That oral information did not purport to inform defendant that he had failed the breath test and, consequently, that his license had been suspended, nor could it have. As McCarver testified, and as ORS 813.100(1) commands, Section I is read to defendants *before* the test is administered. It was only after defendant had failed the breath test that McCarver filled out the first page of the implied consent form, and it is page one that explains that defendant had failed the breath test and provides that his license will be suspended.

Further, nothing in the record establishes that, after defendant had failed the test, McCarver orally told

him that his license would be suspended. In discussing whether he had physically handed both pages of the implied consent form to defendant, McCarver stated that he did not remember whether he had physically handed defendant the form, but that he was "absolutely sure" that he had "provided it" to him. McCarver testified that generally he will bring defendants the form and will "explain what it is and that it was the form that [he] had just read to them a few minutes prior." Nothing about that testimony indicates that he orally conveyed to defendant that his license was suspended as a result of failing the breath test. Although McCarver stated that he generally tells defendants "what [the form] is," that information could have included any or all of the information in the form. For example, McCarver could have told defendant that he had failed the breath test and then simply referred defendant to the form if defendant wanted to learn more about his rights, or McCarver could have been more specific and told defendant that his license would be suspended beginning at "12:01 a.m. on the 30th day after the date of arrest." In other words, McCarver's broad statement does not indicate how specific or general McCarver was in explaining "what [the form was]." Further, as previously explained, because Section I of page two of the form that McCarver read to defendant does not include information about the license suspension, McCarver's testimony that he had communicated to defendant that the form being placed in the bin was "the form that [he] had just read to [him] a few minutes prior" does not establish that McCarver orally provided defendant with information of the license suspension.

Defendant sought to argue that, because it was in English, not Spanish, the oral information from the officer did not constitute adequate notice of the license suspension under the affirmative defense statute. Defendant does not contend that the form should have been in Spanish. Defendant also does not argue that the oral information that the officer provided was insufficient because it did not include information that defendant's license was suspended. Defendant argues only that the lack of translation of the officer's spoken English into Spanish meant that he lacked notice of the suspension. But the lack of translation could not

cause a lack of notice under these circumstances, because, even if the officer's spoken English had been translated into Spanish, it still would not have notified defendant that his license had been suspended. Consequently, even if defendant had been able make that argument to the jury, it would not have advanced defendant's affirmative defense based on lack of notice. Because defendant does not challenge the sufficiency of the notice afforded by the form or the lack of notice afforded by the officer's oral statements—regardless of whether they were in English or in Spanish—defendant could not prevail on his affirmative defense.

For purposes of the affirmative defense, the issue the jury was asked to decide was whether defendant had "received notice" of his license suspension under the affirmative defense statute. However, the oral information that the officer provided included only generalized information about a person's rights and consequences as required by ORS 813.100 and ORS 813.130 of the implied consent laws; defendant did not show that it included the information that defendant's license would be suspended. In other words, "the particular issue to which the error pertains"—the officer's oral communication of defendant's rights and consequences under the implied consent laws—has "no relationship to the jury's determination of its verdict"—whether defendant had received notice of his license suspension under the affirmative defense statute. *See Gibson*, 338 Or at 576. As a result, we conclude that there is little likelihood that this particular alleged error affected the verdict.

We turn to defendant's requested jury instruction, which we review for legal error. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). "A party is entitled to a jury instruction on its theory of the case if the requested instruction correctly states the law, is based on the operative pleadings, and is supported by the evidence." *State v. Williamson*, 214 Or App 281, 285, 164 P3d 315, *rev den*, 343 Or 554 (2007). We view the facts in the light most favorable to defendant. *State v. Oliphant*, 347 Or 175, 178, 218 P3d 1281 (2009). "There is no error if the requested instruction is not correct in all respects" or "if the substance of the requested jury instruction, even if correct, was covered fully by other jury

instructions given by the trial court." *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106, 957 P2d 147 (1998).

We start by clarifying what is not in dispute. It is undisputed that defendant's proposed jury instruction was based on the operative pleadings, there was evidence in the record to support giving that instruction, and no other jury instruction given covered defendant's requested instruction. Thus, the only issue for us to resolve is whether defendant's jury instruction correctly stated the law under ORS 811.180(1)(b).

As previously noted, defendant's jury instruction provided:

> "Adequate notice is notice that under the circumstances and conditions would apprise the affected individual of an impending action and afford them an opportunity to present their objections."

Defendant argues that the trial court erred in refusing to give his requested jury instruction because notice under the affirmative defense statute must be "reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action." For the following reasons, the trial court did not err in refusing to give the instruction.

There are two components to procedural due process: notice and an opportunity for a hearing. *See Mullane*, 339 US at 313 ("[T]he Due Process Clause *** require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). Though the right to a hearing is interrelated to having received adequate notice, those rights are distinct. *See id.* at 314 (explaining that the "fundamental requisite of due process of law is the opportunity to be heard[, which] *** has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." (Internal quotations and citation omitted.)).

Here, defendant's argument—that the officer's oral communication of his license suspension in a language that he did not understand was not adequate notice—is based

entirely on the sufficiency of the notice. However, defendant's requested jury instruction includes both components of the procedural due process rights—notice *and* the opportunity for a hearing.

As noted above, ORS 811.180(1)(b) provides an affirmative defense if

> "[t]he defendant had not received notice of the defendant's suspension or revocation or been informed of the suspension or revocation by a trial judge who ordered a suspension or revocation of the defendant's driving privileges or right to apply."

The second half of defendant's requested jury instruction, which states that a person must be "afford[ed] *** an opportunity to present their objections," encompasses the right to a hearing. However, defendant provides no argument or legal authority to suggest that "notice" for purposes of ORS 811.180(1)(b) includes the right to challenge the underlying suspension in an administrative hearing. Further, there is nothing in the plain text of ORS 811.180 that suggests a legislative intent to create an affirmative defense to driving while suspended based on an argument that the defendant was not afforded an administrative hearing to challenge the underlying license suspension. *See, e.g.*, *Comcast Corp. v. Dept. of Rev.*, 363 Or 537, 545, 423 P3d 706 (2018) (rejecting proposed interpretation because it "would require this court to insert" wording that the legislature chose not to include); *see also* ORS 174.010 (in construing a statute, courts are to "ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted"). Therefore, defendant was not entitled to his requested jury instruction because it was not a correct statement of the law, and the trial court did not err.

Affirmed.