Submitted April 9, reversed and remanded May 26, 2021

## In the Matter of the Suspension of the Driving Privileges of Tamara Angeney.

### Tamara ANGENEY,
*Petitioner-Respondent,*

*v.*

### DRIVER AND MOTOR VEHICLE SERVICES BRANCH (DMV),
a division of the Department of Transportation,
*Respondent-Appellant.*

Lincoln County Circuit Court
19CV43403; A173566

490 P3d 183

Petitioner was arrested for driving under the influence of intoxicants (DUII) and refused to take a breath test, prompting the Driver and Motor Vehicles Services Division (DMV) of the Department of Transportation (ODOT) to propose suspending her driving privileges for three years. After a contested-case hearing, an administrative law judge (ALJ) issued a final order affirming the proposed suspension. On judicial review, the circuit court reversed the ALJ's final order, concluding that the record lacked substantial evidence that the arresting deputy complied with ORS 813.130 (2017) in informing petitioner of the rights and consequences of refusing a breath test. DMV appeals. *Held*: The circuit court erred in reversing the ALJ's final order. Under ORS 813.130 (2017), the deputy was required to inform petitioner of the rights and consequences of refusal "substantially in the form" prepared by ODOT, but he was not required to phrase the breath-test request in a particular way. The evidence in the record was sufficient to establish that the deputy complied with ORS 813.130 (2017), such that the ALJ's final order should have been affirmed.

Reversed and remanded.

Deanne L. Darling, Senior Judge.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Colm Moore, Assistant Attorney General, filed the brief for appellant.

No appearance for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Reversed and remanded.

**AOYAGI, J.**

Petitioner was arrested for driving under the influence of intoxicants (DUII) and refused to take a breath test, prompting the Driver and Motor Vehicles Services Division (DMV) of the Department of Transportation (ODOT) to propose suspending her driving privileges. After a contested-case hearing, an administrative law judge (ALJ) issued a final order affirming the proposed suspension, with the suspension beginning 30 days after the date of petitioner's arrest. On judicial review, the circuit court reversed the final order, and DMV appeals. For the following reasons, we agree with DMV that the ALJ's order was supported by substantial evidence. We therefore reverse the circuit court judgment and remand with instructions to reinstate the final order.

We take the relevant historical facts from the ALJ's order. *See Bianco v. DMV*, 257 Or App 446, 448, 307 P3d 470 (2013). Even though this case is on appeal from a circuit court judgment, we "review the underlying administrative order to determine whether the ALJ correctly interpreted and applied the law and whether the order is supported by substantial evidence." *Id.*; ORS 813.450(4).[1]

Deputy Tadlock arrested petitioner for DUII. At the jail, in preparation for requesting a breath test, Tadlock advised petitioner of the "rights and consequences" of refusing a breath test, by reading to her sections I(a) through (i) from the back of DMV's Implied Consent Combined Report (ICCR) and giving her a copy so that she could follow along. Tadlock then asked petitioner for her "physical cooperation" in taking a breath test under the implied-consent law. Tadlock requested physical cooperation rather than using the test-request question printed on the ICCR—"Will you take a breath test?"—because a card posted in the room contained "updated language" for requesting a breath

---

[1] All statutory references herein are to the current Oregon Revised Statutes*, except* ORS 813.130. ORS 813.130 was materially amended in 2019, effective January 1, 2020. We construe ORS 813.130 (2017), as the version in effect when petitioner was arrested. Some of the other cited statutes were also amended in 2019, but not in a way material to this appeal, so, except for ORS 813.130, we cite the current statutes.

test.[2] Petitioner refused the request and asked to speak to an attorney. Tadlock gave petitioner a 20-minute break with phone access. When he returned, Tadlock asked petitioner simply whether she would take a breath test, and she again refused. Tadlock accepted the second refusal and gave petitioner written notice of the intent to suspend her license.

DMV subsequently proposed to suspend petitioner's license for three years based on her refusal to take a breath test. Petitioner requested a hearing. Before the suspension went into effect, a contested-case hearing was held before an ALJ. Based on Tadlock's testimony (as described above), petitioner argued that DMV had failed to establish that "the information about rights and consequences" that Tadlock had given her was "substantially in the form prepared by [ODOT]," as required by ORS 813.130(1) (2017), *amended by* Or Laws 2019, ch 475, § 1. Petitioner argued that Tadlock had not used ODOT-approved language for his first breath-test request, because he did not use the question printed on the ICCR ("Will you take a breath test?") but instead used "updated language" that he believed had been supplied by the State Police (requesting physical cooperation). Petitioner further argued that DMV had failed to meet its burden of proof by not putting the exact words of Tadlock's first request into evidence.

The ALJ issued a final order affirming DMV's proposed three-year suspension of petitioner's driving privileges. The ALJ reasoned that no statute or administrative rule requires an officer to use particular language to request a breath test. That is, although ORS 813.130 (2017) requires the information about "rights and consequences"

---

[2] We note that petitioner's arrest occurred six months after the Supreme Court issued its decision in *State v. Banks*, 364 Or 332, 434 P3d 361 (2019). In *Banks*, the court held that a criminal defendant's refusal to take a breath test was inadmissible as evidence of his guilt in a DUII prosecution, because the officer's question—"Will you take a breath test?"—was ambiguous as to whether the officer was asking him only for his physical cooperation or was asking him to consent to a search in the constitutional sense. *Id*. at 343. Because "the state did not meet its burden to establish that [the officer's] request was solely a request for physical cooperation and could not reasonably be understood as a request for constitutionally significant consent to search," the defendant's refusal to take the breath test was inadmissible as evidence of his guilt. *Id*.

to be "substantially in the form" prepared by ODOT, it does not require the *breath-test request* to be in any particular form. Here, the ALJ stated, "the rights and consequences were read *verbatim*, and the form of the breath test question does not alter the advisement." The ALJ further concluded that, even if the phrasing of the first request was somehow objectionable, the second request was phrased simply and "cured" any problem.

On judicial review, the circuit court reversed. It concluded that "there isn't substantial evidence in the record that the rights consistent with the statute, without contradiction or coercion or anything else, w[ere] read" to petitioner, because the exact words of Tadlock's first breath-test request were not in the record. The court viewed it as "incumbent upon the officer to prove what it was he said to make sure that what he did say was compliant with what he's supposed to say and not contradictory to that." The court also disagreed with the ALJ, legally, that the second request cured any problem with the first request. Accordingly, the circuit court entered a general judgment reversing DMV's suspension of petitioner's driving privileges, which DMV appeals.

Under ORS 813.100(1), as relevant here, "any person who operates a motor vehicle upon premises open to the public or the highways of this state shall be deemed to have given consent, subject to the implied consent law, to a chemical test of the person's breath *** for the purpose of determining the alcoholic content of the person's blood if the person is arrested for" DUII. Before a breath test is administered, the person must "be informed of consequences and rights as described under ORS 813.130." ORS 813.100(1). "The information about rights and consequences shall be substantially in the form prepared by [ODOT]," and ODOT "may establish any form it determines appropriate and convenient." ORS 813.130(1) (2017).

If the person refuses to submit to a breath test, after having "been informed of rights and consequences as provided under ORS 813.130," the person's driving privileges are subject to suspension. ORS 813.100(2). When a refusal occurs, the police officer is required to take certain actions,

including reporting the refusal to ODOT. ORS 813.100(2)(d); *see also* ORS 813.120 (specifications for report). Upon ODOT's receipt of such a report, ORS 813.410 provides for automatic suspension of the person's driving privileges, subject to the right to request a hearing. If the person requests a hearing, the hearing "shall be limited to whether the suspension is valid." ORS 813.410(6). As relevant here, a suspension of driving privileges for refusing a breath test is "valid" if the person was under arrest for DUII, the police had reasonable grounds to believe that the person had committed DUII, the person refused a breath test, the person "had been informed under ORS 813.100 of rights and consequences as described under ORS 813.130," and the person was given written notice of intent to suspend. ORS 813.410(6).

The only issue on appeal pertains to whether petitioner "had been informed under ORS 813.100 of rights and consequences as described under ORS 813.130." ORS 813.410(6)(e). The ALJ found that she had been, but the circuit court reversed, concluding that the ALJ's final order was not supported by substantial evidence, because, absent evidence of Tadlock's exact words in requesting petitioner's physical cooperation, DMV failed to prove that petitioner had been informed of the rights and consequences in ORS 813.130 (2017) "without contradiction or coercion or anything else."

We agree with DMV that the ALJ's final order is sound and that the circuit court erred in reversing it. The ALJ was correct to read ORS 813.130(1) (2017) as requiring that information about "rights and consequences" be given to a person "substantially in the form" prepared by ODOT but as not requiring that a breath-test *request* be phrased in a particular way. That construction of the statute is compelled by its plain text and context. *See State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009) (statutory construction principles); *see also Altree v. DMV*, 125 Or App 215, 217, 865 P2d 441 (1993) ("The referee properly concluded that a request to take a breath test need not follow a particular form."). Of particular note, subsections (2) and (3) of ORS 813.130 (2017) describe in great detail the substance of "the information about rights and consequences" that is to be

provided, and they are entirely silent about the phrasing of the *request*.[3]

As for Tadlock's exact words not being in evidence, that did not preclude the ALJ from finding that petitioner was informed of the rights and consequences in ORS 813.130 (2017) before refusing to take a breath test. Tadlock testified to reading the rights and consequences to petitioner from the back of the ICCR form, to giving petitioner her own copy to follow along, to requesting petitioner's physical cooperation with a breath test, and to petitioner's refusal. Testimony is evidence. Tadlock did not remember the exact words that he used, and no copy of the updated-question card was put into evidence, so it is not *impossible* that Tadlock said something contrary to the rights and consequences in ORS 813.130. However, there is *no evidence* that he did, and DMV did not have to disprove a mere possibility to meet its burden of proof. *Cf. Murdoch v. DMV*, 311 Or App 386, 395, 492 P3d 89 (2021) (holding that suspension of driving privileges was invalid, where the trooper told the petitioner that he would immediately obtain a search warrant if the petitioner refused the breath test, thereby "add[ing] an additional consequence—beyond those contained in the approved ICCR—to 'coerce' the driver" to agree to a breath test); *Hays v. DMV*, 230 Or App 559, 561, 216 P3d 902 (2009) (holding that suspension of driving privileges was invalid, where the police officer threatened to obtain a blood or urine sample if the petitioner refused a breath test, which was not a stated consequence of refusal under ORS 813.130).

Under the circumstances, there was substantial evidence to support the ALJ's finding that petitioner was informed of the rights and consequences in ORS 813.130 (2017) before she refused a breath test. Because it did not violate ORS 813.130 (2017) for Tadlock to request petitioner's

---

[3] We reiterate that we are construing the 2017 version of ORS 813.130. Due to legislative amendments in the wake of *Banks*, since January 1, 2020, ORS 813.130 has required a police officer to provide "additional information" to a person who refuses a breath test, including: "If the person refuses to provide consent to a breath or blood test, and is thereafter requested to provide only physical cooperation to submit to a breath or blood test, and the person refuses to physically submit to a test, evidence of that refusal may be offered against the person." ORS 813.130(3)(a) (2019). To avoid potential confusion, we emphasize that ORS 813.130 (2017) did *not* contain that provision.

physical cooperation with a breath test—instead of asking "Will you take a breath test?"—after informing her of the rights and consequences of refusal, we need not address whether the second breath-test request would have "cured" any problem with the first request.

Accordingly, we reverse and remand the judgment of the circuit court with instructions to reinstate the ALJ's final order.

Reversed and remanded.