Argued and submitted March 3; decision of Court of Appeals and judgment of circuit court reversed, order of Driver and Motor Vehicle Services Division affirmed October 20, 2022

In the Matter of
the Suspension of the Driving Privileges of
Michael Thomas Murdoch.

Michael Thomas MURDOCH,
*Respondent on Review,*

*v.*

DRIVER AND MOTOR VEHICLE
SERVICES DIVISION (DMV),
a Division of the Department of Transportation,
*Petitioner on Review.*

(CC 17CV49033) (CA A169189) (SC S068728)

519 P3d 115

A state trooper arrested petitioner for driving under the influence of intoxicants. The trooper informed petitioner of the rights and consequences related to failing or refusing to submit to a chemical breath test. ORS 813.130 (2017). Additionally, the trooper informed petitioner that she would seek a warrant if petitioner refused to submit to the test. Petitioner refused, and Driver and Motor Vehicle Services Division (DMV) suspended his driving privileges pursuant to ORS 813.410 (2017). Petitioner challenged DMV's suspension, arguing that the arresting trooper had modified the authorized procedure by informing him of a consequence—that she would seek a warrant—that was not included on the DMV-approved implied-consent form. An administrative law judge (ALJ) upheld DMV's suspension. The circuit court reviewing DMV's order vacated the suspension, and the Court of Appeals affirmed. *Held*: The ALJ's final order suspending petitioner's driving privileges must be affirmed because petitioner was informed of the rights and consequences related to breath-test refusals "as described under ORS 813.130." ORS 813.410(6)(e) (2017).

The decision of the Court of Appeals and the judgment of the circuit court are reversed. The order of the Driver and Motor Vehicle Services Division is affirmed.

En Banc

On review from the Court of Appeals.*

Colm Moore, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also

_____

* Appeal from Columbia County Circuit Court, Cathleen B. Callahan, Judge. 311 Or App 386, 492 P3d 89 (2021).

on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

John Henry Hingson, III, John Henry Hingson, III, P.C., Oregon City, argued the cause and filed the brief for respondent on review.

DeHOOG, J.

The decision of the Court of Appeals and the judgment of the circuit court are reversed. The order of the Driver and Motor Vehicle Services Division is affirmed.

**DeHOOG, J.**

Oregon law provides law enforcement officers investigating the offense of driving under the influence of intoxicants (DUII), ORS 813.010, with various tools to aid in that investigation. Among them are breath testing to determine the blood-alcohol content (BAC) of a person suspected of DUII and, under appropriate circumstances, search warrants authorizing the drawing and testing of the person's blood. To encourage such a person to submit to breath testing, the legislature, as part of Oregon's "implied consent" law, has directed law enforcement to inform a person arrested for DUII of certain specific adverse consequences of a refusal, in addition to various other rights and consequences associated with the person's decision regarding the breath test. One consequence of refusing the test is an administrative suspension of the person's driving privileges without regard to the person's actual BAC or the outcome of any criminal DUII proceedings.

At issue in this case is whether the suspension of petitioner's driver's license for refusing a breath test was valid when, in addition to providing petitioner with the statutorily required information regarding rights and consequences, the arresting officer also told petitioner that she would seek a search warrant for a blood draw if petitioner refused the test. The Department of Transportation, Driver and Motor Vehicle Services Division (DMV) suspended petitioner's driving privileges, but, after petitioner sought judicial review in circuit court, the circuit court set aside that suspension, a decision that the Court of Appeals later affirmed. *Murdoch v. DMV*, 311 Or App 386, 388-89, 492 P3d 89 (2021). For the reasons that follow, we conclude that DMV properly suspended petitioner's driving privileges, and we therefore reverse the Court of Appeals' decision and the circuit court's judgment.

## I.   BACKGROUND

A.   *Facts*

The events leading to petitioner's arrest for DUII and his subsequent refusal to take a breath test are uncontested on review. As the Court of Appeals accurately described:

"A witness initially reported petitioner's vehicle traveling at erratic speeds and failing to maintain his driving lane. After receiving that report, a state trooper saw petitioner's vehicle, which matched the witness'[s] description, drifting across traffic lanes. The trooper initiated a traffic stop based on the observed traffic violations and for suspicion of driving under the influence of intoxicants (DUII). Once stopped, the trooper began to explain to the driver the reason for the stop, but the driver, who was later identified as petitioner, interjected, telling the trooper, 'I'm hammered,' as he handed his keys to the trooper. Petitioner also told the trooper that he drank three whiskeys that night, in addition to other things. The trooper observed that petitioner had bloodshot, watery eyes, with dilated pupils. She also detected a strong odor of alcoholic beverage coming from petitioner's breath and observed that petitioner's speech was slurred. The trooper concluded that, more likely than not, petitioner had committed the offense of DUII.

"Although petitioner initially agreed to perform standardized field sobriety tests (SFSTs), when the trooper asked petitioner to stand in the instructional position, petitioner said, 'I'm going to waive those,' which the trooper understood to mean that petitioner refused to perform the SFSTs. The trooper then read to petitioner, from a prepared card [describing] the consequences of refusing to take the SFSTs, before asking petitioner a second time whether he would perform the SFSTs. Petitioner refused a second time. The trooper then arrested petitioner for DUII and transported him to the Columbia County Jail."

*Murdoch*, 311 Or App at 389.

At the jail, Senior Trooper May of the Oregon State Police, who had arrested petitioner, advised him of his *Miranda* rights, which petitioner indicated he understood. May followed that by asking petitioner, "Are you going to take the breathalyzer?" *Id.* at 390. May then said,

"No?[1] Okay. I'm going to read [this] to you, and I will go straight on to write a search warrant then. That's what we do in this county. We write search warrants if you are going to refuse."

---

[1] Petitioner does not appear to have responded audibly to May's inquiry, and the record does not reflect whether he shook his head or otherwise indicated a negative response at that time.

*Id*. May then informed petitioner of various rights and consequences related to breath testing by reading them to him from the Implied Consent Combined Report (implied-consent form).[2] After reading petitioner those rights and consequences, May asked him to take a breath test, but petitioner declined. Following that refusal, May informed him that his license would be suspended and gave him a copy of the implied-consent form. Thereafter, DMV proposed to suspend petitioner's driving privileges for one year.

B.   *Procedural History*

Petitioner challenged DMV's proposed suspension of his driving privileges before an administrative law judge (ALJ). He raised two alternative arguments: (1) May had been required to inform him of the rights and consequences before—and not after—May's initial request that he submit to a breath test; and (2) May's statement that she would seek a warrant if petitioner refused the test—a consequence that is not included in DMV's approved implied-consent form—modified the authorized procedure and therefore failed to comply with ORS 813.130 (2017).[3]

---

[2] The Implied Consent Combined Report, or ICCR, is a DMV-approved form listing, among other things, various rights and consequences related to breath testing as detailed in ORS 813.130, which is discussed below.

[3] Petitioner's driving privileges were suspended under the implied-consent law in effect at the time of his DUII arrest in 2017. Several of those statutes have been amended. *See e.g.*, ORS 813.100 (2017), *amended by* Or Laws 2019, ch 475, § 1; ORS 813.130 (2017), *amended by* Or Laws 2019, ch 475, § 2; and ORS 813.410 (2017), *amended by* Or Laws 2019, ch 312, § 22; Or Laws 2021, ch 302, § 1; Or Laws 2021, ch 630, § 118. The amendments to ORS 813.410 resulted in the renumbering of subsections of that statute. At least one of those amendments has not yet taken effect and we express no view as to whether the changes made by any of the aforementioned amendments would lead to a different outcome under the facts of this case.

As in effect in 2017, ORS 813.130 provided, in part:

"This section establishes the requirements for information about rights and consequences for purposes of ORS 813.100 and 813.410. The following apply to the information about rights and consequences:

"(1) The information about rights and consequences shall be substantially in the form prepared by the Department of Transportation. The department may establish any form it determines appropriate and convenient.

"(2) The information about rights and consequences shall be substantially as follows: [listing various rights and consequences related to failing or refusing to take a breath test]."

May testified at the administrative hearing, and DMV and petitioner both introduced exhibits. In the resulting final order, the ALJ focused on petitioner's second argument, considering whether May's statement that she would "write a search warrant" had exceeded her authority, rendering the ensuing license suspension invalid. Citing *Hays v. DMV*, 228 Or App 689, 209 P3d 405 (*Hays I*), *modified on recons*, 230 Or App 559, 216 P3d 902 (2009) (*Hays II*), the ALJ concluded that May had not exceeded her authority because she had not threatened an *unlawful* consequence of refusing to take the blood test.[4] *See Hays I*, 228 Or App at 699 (where officer had made unlawful threat to obtain warrant to test driver's blood, threat exceeded officer's lawful authority, and "any consent thereby induced [was] not lawfully obtained."); *Hays II*, 230 Or App at 561 (clarifying that, because the threat of unlawful consequences meant that the driver's license suspension had been "based on a legally unauthorized procedure," suspension was "invalid as a matter of law"). Thus, because May had lawful authority to seek a warrant under the circumstances, her statement did not invalidate the suspension—that is, it did not "exceed her authority expressed or implied under ORS 813.130[.]" The ALJ therefore issued a final order affirming the suspension of petitioner's license.

Petitioner sought judicial review of the final order in circuit court. ORS 813.450. Both parties' briefing focused on the ALJ's conclusion that May's statements had not exceeded her lawful authority, with both specifically disputing the ALJ's interpretation of *Hays I* and *Hays II*. Ultimately, however, relying on petitioner's alternative argument that the timing of May's advice to him had failed to comply with ORS 813.100, which requires that a person be informed "[b]efore the test is administered," the circuit court reversed and remanded the ALJ's final order for further proceedings. The court subsequently entered a general judgment vacating petitioner's license suspension, which DMV appealed.

---

[4] Although May referred to "writ[ing] a search warrant," as opposed to writing out an affidavit in support of a judicial search warrant, the parties appear to regard May as having spoken in shorthand. Petitioner has never contended that May threatened to take some action that she could not lawfully take or, specifically, that she would not have been permitted to seek a search warrant authorizing her to have petitioner's blood drawn and tested.

As an initial matter, the Court of Appeals rejected the circuit court's rationale that the timing of May's advice to petitioner had rendered the license suspension invalid. The court then turned to petitioner's second argument, regarding the effect of May's statement to petitioner that she would seek a warrant if he refused to take a breath test. The court agreed with petitioner's interpretation of *Hays I* and *Hays II*, concluding that those decisions had not turned on the lawfulness—or unlawfulness—of the officer's statement that he would get a warrant. In the court's view, the operative inquiry was whether the statement about a warrant, lawful or not, was part of the authorized administrative procedure. The court concluded that May's statement about seeking a warrant had modified the advice of rights and consequences contemplated by the statutory scheme and was therefore a "legally unauthorized procedure." Because, the court reasoned, May had followed an invalid procedure, the administrative sanction of suspension based on that procedure was likewise invalid. *Murdoch*, 311 Or App at 395-96.

DMV petitioned for review, which we allowed.

## II.   ANALYSIS

As just noted, the Court of Appeals characterized the "operative inquiry [as] whether [May's] statement about a warrant—lawful or not—was part of the authorized administrative procedure" for suspending a person's driving privileges under ORS 813.410. *Murdoch*, 311 Or App at 395. We, however, view the relevant inquiry somewhat differently than did the Court of Appeals and, for the following reasons, ultimately agree with the ALJ's conclusion that the suspension of petitioner's driving privileges was valid.

A.  *Suspension of Driving Privileges Under the Implied-Consent Law*

In resolving whether petitioner's driver's license was properly suspended, we view the operative inquiry much the same as DMV framed it in the "question presented" section of its petition for review:

"When a law enforcement officer arrests someone for driving under the influence of intoxicants and reads the

> person the [implied-consent form], is the entire implied
> consent administrative process invalid if the officer also
> tells the person of the additional consequences of refus-
> ing a breath test, such as applying for a search warrant, if
> those additional consequences are truthful but go beyond
> the listed consequences of the [implied-consent form]?"

In describing its own inquiry as it did, the Court of Appeals
appears to have assumed that, by giving petitioner advice
that the legislature did not *require* DUII suspects to be
given under the circumstances, May somehow impermissi-
bly "modifi[ed]" the "authorized administrative procedure,"
*Murdoch*, 311 Or App at 395-96. Given that premise, the
court concluded that the modified procedure was "legally
unauthorized" and, therefore, "invalid," *id.* at 396, render-
ing the suspension of petitioner's driving privileges itself
invalid, *id.*

　　　　We, on the other hand, find it less obvious whether
May impermissibly "modifi[ed]" the legally authorized pro-
cedure when she told petitioner that she would pursue a
search warrant if he refused to submit to a breath test.
That inquiry requires a closer examination of the statutory
provisions.

　　1.　*Suspension hearings under ORS 813.410*

　　　　As noted, DMV suspended petitioner's driving priv-
ileges following an administrative hearing held under ORS
813.410 (2017). That statute provides, in part, that, if DMV
"receives from a police officer a report that is in substan-
tial compliance with ORS 813.120,"[5] DMV must "suspend
the driving privileges of the person [arrested for DUII] * * *
on the 30th day after the date of arrest * * * unless, at a

---

[5] As relevant here, ORS 813.120(1) requires the officer's report to indicate,
among other things, whether (1) **"**the person, at the time the person was requested
to submit to a [breath] test, was under arrest for" DUII; (2) "the police officer had
reasonable grounds to believe, at the time the request was made, that the person
arrested had been driving under the influence of intoxicants"; (3) "the person
*refused to submit to a test"*; and (4) "*the person was informed of consequences and
rights as described under ORS 813.130.*" (Emphases added.) There is no dispute
that May's report included the required information; that petitioner was in fact
under arrest for DUII at the time he was asked to take a breath test; that there
were "reasonable grounds to believe" that he had been driving under the influ-
ence; and that he refused to submit to a breath test.

hearing described under" ORS 813.410, DMV "determines that the suspension would not be valid as described in [that] section." ORS 813.410(1) (2017).

The suspension-hearing requirements of ORS 813.410 (2017) further set out the substantive issues to be addressed at the hearing and require that its provision listing those issues be "narrowly construed so as to effect the legislative purpose of limiting the scope of hearings under this section." ORS 813.410(6) (2017). That statute also provides that the scope of a hearing under ORS 813.410 "shall be limited to whether the suspension is valid as described in this subsection." ORS 813.410(6) (2017). Finally, it states that a suspension "is valid if all of the following requirements have been met[,]" which include that "[t]he person [was] informed under ORS 813.100 of rights and consequences as described under ORS 813.130." ORS 813.410(6)(e) (2017).

2.  *The implied-consent framework: ORS 813.100, ORS 813.130, and ORS 813.410*

The parties' dispute effectively centers on ORS 813.410(6)(e) (2017) and its requirement that, for a suspension to be valid, the person asked to take a breath test must have been "informed under ORS 813.100 of rights and consequences *as described under ORS 813.130.*" ORS 813.410(6)(e) (2017) (emphasis added). On review in this court, there is no dispute that May "informed [petitioner] under ORS 813.100 of rights and consequences," at least in a general sense.[6] Nor is there any dispute that May read the implied-consent form to petitioner, that DMV had approved the implied-consent form, or that the implied-consent form that May read to petitioner itself complied with ORS 813.130 (2017). *See* ORS 813.130(2) (2017) (stating that the "information about rights and consequences shall be substantially as follows" and listing various details related to DUII and to breath-test failure or refusal); ORS 813.130(1) (2017) (assigning DMV

---

[6] In his response to DMV's brief on the merits, petitioner does not reprise his argument—which, as previously noted, the Court of Appeals rejected—that the timing of May's advice to him as to the rights and consequences set forth in ORS 813.130 rendered that advice and the ensuing suspension of his driver's license invalid.

responsibility for establishing the form in which information about rights and consequences is to be provided; permitting DMV to "establish any form it determines appropriate and convenient").

What *is* disputed is whether May failed to inform petitioner of the rights and consequences of failing or refusing a breath test "as described" under ORS 813.130 (2017) when, in addition to reading the implied-consent form, May also told petitioner that she would seek a search warrant if he refused to submit to a breath test. DMV asserts that, by reading petitioner the DMV-approved implied-consent form—which itself undisputedly tracked ORS 813.130 (2017)—May also satisfied the requirements of ORS 813.130 (2017) itself; that is, she advised him of the rights and consequences that the statute describes. Petitioner, however, disagrees. Echoing the Court of Appeals' conclusion, he contends that, when May told him that she would pursue a search warrant if he refused to submit to a breath test, she had "modifi[ed]" the advice of rights and consequences that ORS 813.130 (2017) authorized. That, petitioner reasons, means that May did not advise him of the rights and consequences of a refusal "as described under ORS 813.130." Rather, she provided him with information that ORS 813.130 (2017) did not authorize and so unilaterally modified the statutorily authorized procedure. Petitioner therefore concludes that DMV's suspension of his driving privileges was not "valid" under ORS 813.410 (2017).

Taking a closer look at ORS 813.130 (2017), that provision gave substance to the requirement under ORS 813.410 (2017) that, for a license suspension to be valid, the person must have "been informed under ORS 813.100 of rights and consequences as described under ORS 813.130." ORS 813.410(6)(e) (2017). Specifically, ORS 813.130 (2017) listed the rights and consequences that officers were required to share with persons arrested for DUII. That section provided, in part:

"This section establishes the requirements for information about rights and consequences for purposes of ORS 813.100 and 813.410. The following apply to the information about rights and consequences:

"(1)   The information about rights and consequences shall be substantially in the form prepared by the Department of Transportation. The department may establish any form it determines appropriate and convenient.

"(2)   The information about rights and consequences shall be substantially as follows: [listing various rights and consequences related to failing or refusing to take a breath test]."[7]

Ultimately, as noted above, the question whether a person who failed or refused to take a breath test "had been informed * * * of rights and consequences as described under ORS 813.130" is a determination to be made under ORS 813.410—if the person was not so informed, any resulting license suspension is presumably not "valid." ORS 813.410(6)(e) (2017). We therefore turn to that question.

B.   *Did the arresting officer inform petitioner of the rights and consequences "as described under ORS 813.130"?*

In light of that applicable framework, the outcome of this case reduces to the following inquiry: What did the legislature mean when it required in ORS 813.410(6)(e) (2017) that, for a suspension of driving privileges based on a breath-test refusal to be "valid," the person asked to take the test must have been informed of rights and consequences "as described under ORS 813.130"? We address that question by applying our familiar approach to statutory interpretation, examining the relevant text in context, together with any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). In conducting that analysis, however, we pay close heed to the legislature's express mandate—and important statutory context—that ORS 813.410(6) (2017) be "narrowly construed so as to effect the legislative purpose of limiting the scope of hearings under [that] section."

We begin by observing that, because May read petitioner the implied-consent form, which itself undisputedly

---

[7]  For purposes of the present discussion, the most noteworthy change between ORS 813.130 (2017) and the current text of ORS 813.130 is probably that, under the earlier statute, arresting officers were required to advise *all* persons arrested for DUII of the rights and consequences related to breath test refusals; under the current statute, only those who initially refuse the test must be given that advice.

contained the same "rights and consequences" as those listed under ORS 813.130 (2017), a comparison of the two is not helpful in resolving the parties' dispute. Rather, we must determine whether, by advising petitioner of an *additional* consequence—one not listed in the statute or implied-consent form—May failed to inform him "as described" under the statute. ORS 813.410(6)(e) (2017).

The disputed text itself—the phrase "as described under"—provides little indication as to its intended meaning. Despite its immediate context, including its cross-reference to ORS 813.130 (2017) (which in turn lists various specific rights and consequences that must be shared with a person arrested for DUII), the phrase "as described" is somewhat imprecise. As a matter of common usage, the meaning of "describe" most relevant here seems to be "to make clear by expounding[,] esp[ecially] in a minute way." *Webster's Third New Int'l Dictionary* 610 (unabridged ed 2002). Because ORS 813.130 (2017) sets out a detailed list of rights and consequences—*i.e.*, it "expound[s]" those rights and consequences "in a minute way"—the legislature may well have simply sought to make clear what rights and consequences arresting officers were required to share with DUII suspects, without necessarily prohibiting officers from sharing additional, legally correct information. But that understanding of the legislature's intent is not the only plausible meaning of the disputed text.

However, as statutory context, ORS 813.130 (2017) provides additional guidance. Again, at the time, ORS 813.130 provided, in part:

"This section establishes the requirements for information about rights and consequences for purposes of ORS 813.100 and 813.410. The following apply to the information about rights and consequences:

"(1)  The information about rights and consequences shall be substantially in the form[8] prepared by the

---

[8] A review of the legislative history discloses that the legislature's reference to a "form" contemplates an actual document—here the DMV-approved implied-consent form—containing the rights and consequences listed in ORS 813.130, as opposed to a style, format, or medium of transmitting the required information. *See e.g.,* Tape Recording, Senate Committee on Judiciary, Subcommittee 1, SB 203, Mar 28, 1985, Tape 70, Side B (testimony of Tony De Lorenzo, stating that DMV

Department of Transportation. The department may establish any form it determines appropriate and convenient.

"(2)   The information about rights and consequences *shall be substantially as follows*: [listing various rights and consequences related to failing or refusing to take a breath test[9]]."

(Emphasis added.) Although ORS 813.130 (2017) did not expressly state what was to be done with the listed information, the cross-referenced statutes—ORS 813.100 (2017) and ORS 813.410 (2017)—made it abundantly clear that law-enforcement officers were required to give that information to persons who were arrested for DUII and asked to take the test. *See* ORS 813.100(1) (2017) ("person requested to take the test shall be informed of consequences and rights as described under ORS 813.130"); ORS 813.410(6)(e) (2017) (person must have received information in ORS 813.130 for suspension to be valid). Moreover, then, as now, the wording of ORS 813.130 was mandatory—it "establishe[d] the *requirements* for [the] information" to be provided to such a person. (Emphasis added.) Thus, there can be no doubt—nor is there any dispute here—that an arresting officer must provide all the listed information to a person arrested for DUII and asked to take a breath test. However, again, the fact that an officer is required to provide certain information does not inform us as to whether the legislature intended to invalidate suspensions whenever officers voluntarily told persons arrested for DUII about *additional*, lawful consequences,

---

had a form and was asking legislature to put it in the statute). Thus, we understand this subsection to largely echo subsection (2), which lists the specific rights and consequences to be shared with persons arrested on suspicion of DUII.

[9] The specified information regarding rights and consequences included things such as (1) DUII is a crime punishable by criminal penalties if a test discloses an unlawful BAC; (2) if a person refuses or fails a test, evidence of the refusal or failure is admissible against the person; (3) what constitutes failure of the breath test for purposes of both the crime of DUII and the implied-consent law; (4) failing or refusing a test will result in the suspension of the person's driving privileges; and (5) the suspension will be substantially longer for a refusal than a failure. ORS 813.130(2)(a) - (f) (2017). Similarly, such a person was required to be informed about rights the person had and certain procedural rules governing those rights. *See* ORS 813.130(2)(g) - (L) (2017) (requiring that person be informed of the right to obtain an additional blood-alcohol test at the person's expense; the person's hearing rights and the requirement of a written request for hearing; various timelines related to temporary driving permits, hearings requests, and hearings; and potential qualification for a hardship permit).

simply because the additional information was not statuto-
rily required.

      As to that question, we find further guidance in the
repeated use of the word "substantially" in ORS 813.130
(2017). *See* ORS 813.130(2) (2017) (requiring that the infor-
mation provided be "substantially" as set forth in that sub-
section; ORS 813.130(1) (2017) (requiring that officer give
advice "substantially" as set forth in DMV's form). Given
those mandates, it should go without saying that an offi-
cer's advice to a DUII arrestee must accurately convey the
specified information. *See Webster's* at 2280 (defining "sub-
stantially," in part, as "in a substantial manner"); *id.* (defin-
ing "substantial," in part, as "being that specified to a large
degree or in the main," or "of or relating to the main part
of something"). Indeed, by using the word "substantially,"
the legislature likely meant at least *two* things. The first is
that, although neither an officer's advice nor the implied-
consent form was required to precisely mirror the language
of ORS 813.130(2) (2017), a failure to convey "the main part"
of the listed rights and consequences "to a large degree"
would render a license suspension invalid. And the second is
that, if, in addition to advising a person of the listed rights
and consequences, an officer were to tell the person some-
thing that *changed* the substance of those rights and con-
sequences, that too would invalidate the suspension of the
person's driving privileges. Under those circumstances, the
officer would have failed to convey "the main part" of the
required information, because the advice that the officer
had given would have altered the meaning of the specified
information.

      Here, petitioner has not identified any way in which
May's statement that she would seek a warrant if he refused
to take a breath test altered the substance of the advice of
rights and consequences that she gave petitioner. That is,
petitioner does not contend that, by making that statement,
May somehow conveyed a different message about DUII's
status as a crime, what constituted a breath-test failure, the
consequences of failing or refusing a breath test, petitioner's
rights with regard to a temporary license and an adminis-
trative hearing, or any of the other rights or consequences
detailed in ORS 813.130 (2017). In the absence of a developed

argument to that effect, we see little reason to conclude that May's explanation that she would pursue a search warrant if petitioner refused to take a breath test meant that she failed to advise him, within the meaning of ORS 813.410(6) (2017), of the rights and consequences related to that decision "as described in ORS 813.130."

Rather than explain *how* May altered the substance of the rights and consequences listed under ORS 813.130(2) (2017), petitioner emphasizes a different subsection of that statute, one relating to *DMV's* authority to supplement the information dictated by subsection (2). Petitioner points to subsection (4), which at the time stated, "Nothing in this section prohibits [DMV] from providing additional information concerning rights and consequences that [DMV] considers convenient or appropriate." ORS 813.130(4) (2017). Petitioner suggests that, by authorizing DMV to augment the statutorily required advice, the legislature gave DMV *exclusive* authority to deviate from the specified rights and consequences. In other words, although DMV might choose to require all officers to inform persons arrested for DUII of the potential to seek a search warrant, no individual officer could unilaterally decide to volunteer that information.

We disagree. Petitioner reads too much into ORS 813.130(4) (2017). Although that subsection expressly gave DMV the flexibility to provide (or, presumably, to require that officers provide) "additional information concerning rights and consequences," we see no reason to infer that the legislature intended to prohibit officers themselves from sharing additional, legally correct information—at least not with the effect that such a deviation would invalidate an otherwise "valid" breath-test refusal. *See* ORS 813.410(6)(e) (2017) (considering whether "person had been informed under ORS 813.100 of rights and consequences as described under ORS 813.130," not whether person also had been informed of other rights or consequences); *see also* ORS 813.100 (2017) (expressly stating only two requirements for suspension of driving privileges based upon a breath-test refusal: (1) informing of rights and consequences as described under ORS 813.130; and (2) a refusal to submit to a breath test by a person so informed).

Turning back to the broader statutory context, we next consider how the requirement that persons arrested for DUII be advised of both their rights and the consequences related to a breath-test refusal fits within the broader implied-consent framework as it existed in 2017. First, under ORS 813.130(2) (2017), as under the current statute, all persons arrested for DUII and asked to take a breath test were required to be advised of various rights and consequences related to taking (and failing) a breath test, as well as about certain afforded rights and the procedural rules governing those rights. *See* ORS 813.130(2)(g) - (L) (2017); 370 Or at 374 n 9 (setting out requirements). Second, also under that same version of ORS 813.130, all persons arrested for DUII and asked to take a breath test were required to be informed of various consequences resulting from a refusal to take the test, whether or not they initially refused the test.[10] Specific to breath-test refusals, the person was required to be told that (1) evidence of a refusal could be admitted against the person; (2) if the person refused to take the breath test, the person's driving privileges would be suspended; (3) a license suspension based on a refusal would "be substantially longer" than a suspension based upon a breath-test failure; (4) if the person refused a breath test, then the person would not be eligible for a hardship permit "for at least 90 days, and possibly for three years"; and (5) refusal of a breath test was punishable by a fine of at least $500 and not more than $1,000. ORS 813.130(2)(a) - (f) (2017); 370 Or at 374 n 9 (setting out requirements).

In sum, while most of the rights-and-consequences information required to be provided applied to all persons arrested for DUII, the required refusal-specific information—which ultimately frames the issue in this case—concerned the consequences of refusing a test and, specifically, the various ways in which refusals would be penalized. In that regard, the requirement that persons arrested for DUII be informed about the penalties for refusal is consistent with

---

[10] In its current form, ORS 813.130 provides a bifurcated list of rights and consequences, and it requires arresting officers to read those applicable to breath-test refusals to a person arrested for DUII only if the person initially refuses to take the test after having been informed of the rights and consequences related to breath-test failures. ORS 813.130(3).

the long-recognized purpose of the implied-consent law: to lawfully coerce such persons to submit to the breath test. As summarized in *State v. Banks*, 364 Or 332, 340-41, 434 P3d 361 (2019):

> "This court has explained that the implied-consent statutes are meant "'to overcome the possibility of physical resistance *** without resort to physical compulsion" by imposing adverse legal consequences on a refusal to submit to the test.' [*State v.*] *Spencer*, 305 Or [59,] 67[, 750 P2d 147 (1988)] (quoting [*State v.*] *Newton*, 291 Or [788,] 793[, 636 P2d 393 (1981)]; *see also State v. Cabanilla*, 351 Or 622, 632, 273 P3d 125 (2012) (legislative purpose with advice and consequences was to 'coerce a driver's submission to take the tests'); *Spencer*, 305 Or at 71 ('[T]he statute's references to a driver's "refusal" do not evince a legislative concern that the driver make a voluntary and fully informed decision whether to submit to the test.')."

In other words, the principal reason for requiring officers to inform a person arrested for DUII of the adverse consequences of refusing a breath test is to cause the person to submit to the test: ORS 813.130(2) (2017), like the current version of that provision, gave an officer leverage to lawfully coerce such a person—who might otherwise refuse to take the breath test—by itemizing for the person the legislatively created adverse consequences of refusal. Viewed through that lens, the legislature's decision to require, as a predicate to a valid license suspension under ORS 813.410(6)(e) (2017), that the person be "informed *** of rights and consequences as described under ORS 813.130" seems unlikely to reflect a legislative desire to *limit* the amount of lawful information that an arresting officer may share with a person.

Our review of the legislative history supports that understanding. The implied-consent statutes now codified as ORS 813.100 - 813.136 were enacted in 1983, when the legislature substantially revised Oregon's DUII laws. Or Laws 1983, ch 338, § 591; *see also Spencer*, 305 Or at 62 (noting that implied-consent law now codified as ORS 813.100 - 813.136 formerly was codified as ORS 487.805 - 487.835). The legislature enacted the predecessor to ORS 813.130 two years later through Senate Bill (SB) 203, Or Laws 1985,

ch 672, § 22, at which time it also amended the predecessors to ORS 813.100 and ORS 813.410, so that they referred to the new statute. Or Laws 1985, ch 672, §§ 13, 19.

Of relevant concern to the proponents of SB 203 was streamlining and clarifying the implied-consent process by making the following changes: (1) removing the many cross-references to other statutes (in *former* ORS 487.085) that provided rights or consequences related to the breath-test process and replacing them with a single reference to what is now ORS 813.130; and (2) providing DMV with substantive guidance in developing forms to advise drivers of their rights and consequences, rather than relying on the statutory cross-references, many of which were not considered relevant to the decision whether to take the breath test. *See* Tape Recording, Senate Committee on Judiciary, SB 203, May 28, 1985, Tape 151, Side A (statement of Assistant Attorney General Stephanie Smythe); *see* Exhibit N, Senate Committee on Judiciary, SB 203, Mar 28, 1985 (testimony of Assistant Attorney General Stephanie Smythe); *see also* Exhibit C, Senate Committee on Judiciary, SB 203, May 28, 1985 (proposed amendments to SB 203, showing amendments to *former* ORS 487.805 (*renumbered as* ORS 813.100) to remove numerous statutory cross-references and add reference to what is now ORS 813.130).

As Assistant Attorney General Stephanie Smythe explained on behalf of DMV, the numerous statutory cross-references made license suspensions susceptible to legal challenges, because the legislature had not "expressed [its] intent as to what form of advice would substantially comply" with those other provisions. Exhibit N, Senate Committee on Judiciary, SB 203, Mar 28, 1985 (testimony of Assistant Attorney General Stephanie Smythe). Smythe explained that a person arrested for DUII could challenge the advice that an officer had provided from DMV's existing form because that form did not use the exact language of a cross-referenced statute. *Id.* In Smythe's view, the proposed wording set out in what is now ORS 813.130 would help avoid "costly and time-consuming legal challenges to the sufficiency of [the] advice" that arrested persons were being given. *Id.*

Nothing in that legislative history suggests that the legislature intended, by listing various rights and consequences in the predecessor to ORS 813.130, to prohibit officers from explaining additional, lawful consequences—at least not with the intended effect that a refusal would not be "valid" for purposes of ORS 813.410 if an officer were to provide such additional information.[11] Rather, the purpose of listing rights and consequences in a single place (and requiring DMV to develop its own form incorporating that list) was to help ensure that persons arrested for DUII would be sufficiently informed of those rights and consequences, and therefore unable to claim that the statutorily required information had not been provided. It would not further that purpose to conclude that May's action of providing additional information—that she would seek a warrant if petitioner refused the breath test—operated to invalidate the suspension of petitioner's driving privileges.

Instead, the legislative purpose of the statute is advanced if we uphold the validity of petitioner's license suspension. Again, the legislature's concern was that officers advising persons arrested for DUII of the rights and consequences associated with the breath test (with or without the benefit of DMV's existing form) would fail to convey that information with the requisite accuracy and completeness, resulting in otherwise avoidable legal challenges and the undesirable invalidation of license suspensions. Here, there is no dispute that May, relying on the implied-consent form, precisely informed petitioner of the rights and consequences required under ORS 813.130 (2017). Thus, petitioner received the information that the legislature intended, thereby serving the purpose for which the legislature enacted ORS 813.130 (2017).

In light of the foregoing, we conclude that, by providing petitioner with all the information set out in ORS 813.130 (2017) and incorporated into the DMV-approved implied-consent form, May "informed [him] under ORS 813.100 of rights and consequences as described under ORS

---

[11] As noted earlier, there is no dispute here that May had authority to seek a search warrant to test petitioner's BAC as part of her DUII investigation or that evidence resulting from such a search would be admissible against him.

813.130." ORS 813.410(6)(e) (2017). That conclusion is consistent with the text, context, and legislative purpose of ORS 813.410 (2017) and ORS 813.130 (2017), as well as the purposes of the implied-consent law as a whole. Although we do not foreclose the possibility that, under different circumstances, advice regarding consequences other than those listed in ORS 813.130 might somehow alter the meaning of the listed consequences—such that the advice is no longer "substantially" as set out in that statute—petitioner has not shown that to be the case here.

### III.   CONCLUSION

For the reasons stated above, we conclude that the ALJ's final order suspending petitioner's driving privileges must be affirmed because petitioner was informed of the rights and consequences of refusing to submit to a chemical breath test "as described under ORS 813.130." ORS 813.410(6)(e) (2017).

The decision of the Court of Appeals and the judgment of the circuit court are reversed. The order of the Driver and Motor Vehicle Services Division is affirmed.